J. H. RUSSELL, respondent, *v.* WM. CHUMASERO ET AL., appellants.

QUARTZ LODE CLAIMS — *Sufficiency of declaratory statement matter of proof — Defective record cured — Boundaries.* — What are or what are not permanent objects or monuments, as contemplated by the act of congress allowing entries of mineral claims on the public domain, is properly matter of proof for a jury, and cannot be decided by the court by simple reference to the declaratory statement.

A defective record might be cured by stakes or monuments on the ground to identify the claim.

A description giving other claims for boundaries may be good if those claims are marked on the ground as the law contemplates, and this should be open to proof.

*Hauswirth* v. *Butcher, ante,* p. 299, affirmed.

*Appeal from Third District, Lewis and Clarke County.*

E. W. & J. K. TOOLE, for appellants.

1. The offer of the plaintiff to prove his actual possession and occupancy of the property was an offer to establish title as against one who in no way connects himself with a better one. *Atwood* v. *Tricott,* 17 Cal. 37; *English* v. *Johnson,* id. 107; *Hess* v. *Winder,* 30 Cal. 355. And this principle is especially applicable when the question is one barely of right of possession under the act of congress, when the better title must prevail. Then plaintiff showed actual possession, and defendants were not required to and did not show any right of possession. *Campbell* v. *Rankin,* Copp's U. S. Mineral Laws, p. 354. Besides, it was competent under sec. 2332, and was sufficient to entitle him to a patent under said section.

2. The record offered in evidence was all that the law requires. The offer to identify the natural objects or permanent monuments was competent and sufficient. See *Campbell* v. *Rankin, supra,* 355; *Southern Cross G. & S. M. Co.* v. *Eureka Co.* 15 Nev. 383.

The only tenable grounds upon which the objection could stand is that the record was insufficient to secure a grant to the plaintiff, and consequently that title was still in the government, defendant not showing or attempting to show any in himself. But, by sec. 910, U. S. Statutes, applicable to this case, title in the government is not available to either party. See Copp's U. S. Mineral Laws, p. 27, sec. 910.

It is needless to cite authorities to show that actual possession of this kind of property is taken by marking out its boundaries so as that the same can be readily

traced, which plaintiff proposed to prove. Nor do we consider it necessary to cite authorities to the effect that such possession carries with it the presumption of legal title. All that is necessary in such a case to support a valid legal title will be presumed until the contrary is shown. The supreme court of the United States, in *Campbell* v. *Rankin, supra,* says: "If this be the law when the right of recovery depends upon the strict legal title in the plaintiff, how much more appropriate is it of the superior right of possession under the act of congress which respects such possession among miners. Whatever may be the effect given to the record of a mining claim under the act of congress, approved May 10, 1872, it certainly cannot be greater than that given to the registration laws of the states; and they have never been held to exclude parol proof of actual possession, and the extent of that possession, as *prima facie* evidence of title."

CHUMASERO & CHADWICK and SANDERS & CULLEN, for respondents.

This was an action under the mining act of 1872, to determine the right to a patent of the ground in controversy between the parties, the question being which of them has the right to occupy and possess the ground, and obtain title.

The pleadings are as follows:

1. The complaint alleges that on the 1st of June, 1877, the plaintiff was the owner of what he calls the Alta lode.

2. That the defendants claim a portion of said lode as the Free Speech lode, and have applied for a patent; and that plaintiff interposed an adverse claim, and asks that defendant's claim be declared invalid.

3. The answer denies that plaintiff ever was or is the owner of, or in possession of, the premises claimed by defendants as the Free Speech lode; a portion of which is included in the adverse claim of plaintiff.

4. It denies that there is any such lode as "Alta."

5. It denies that the premises claimed by Russell were subject to location.

6. Avers the discovery, location and record of the Free Speech lode by defendants, in October, 1874.

7. That on the 26th of July, 1876, the plaintiff made a pretended location of the premises in controversy, being a portion of the Free Speech lode.

8. That the notice of location, and the location, are too uncertain and indefinite to fulfil the requirements of the law, and that the survey does not comply therewith.

9. Avers the quiet and peaceable possession of the premises in controversy by defendants since November, 1874.

10. Denies all right, title or interest of the plaintiff in or to said premises.

The object of the suit is to determine between the parties which has the better right — both of them making claim under a law of congress, and each denying the right of the other.

Those rights are dependent upon a compliance with the law.

First, on the part of plaintiff, he must show a discovery on vacant and unoccupied land — a valid location — and a record, such as the law requires. See sec. 2324, R. S. U. S.

All such records "must contain" such a description of the claim located, by reference to some natural object or permanent monument, as will identify it. The location must be distinctly marked on the ground, so that its boundaries can be readily traced.

An action like the present is not an *ex parte* proceeding, as assumed by appellant, in which occupancy and possession are all that a party is required to prove. It is one where two conflicting claims are set up, and where the best must win. Everything is in issue, and the plaintiff is required to prove more than that he took pos-

session and occupied. He must show his right so to occupy and possess the disputed ground, or he fails to make a case.

The case in 17th California, p. 37, cited by appellant, is not in point. That action was brought before the act of 1872 was passed, providing for the obtainment of title, and the only material question in that case was the extent of possession. The plaintiff proved the usual customs and regulations as to taking up claims, etc., and the court simply decided that mining claims could be held by possession, but that such possession was regulated and defined by usage, and local and conventional rules; that the claim must be defined as to limits before possession or working on a part would constitute possession of any more than the part actually possessed or worked.

In this case the law takes the place of the customs and usages of miners. It follows from the decision itself that there must be a compliance with them.

The case on page 107, cited, is in reference to a placer claim, and does not vary the tenor of the decision first quoted.

The case in 30th California, 349, is also a case of possession under local customs and usage, and all of the cases cited were prior to the act of 1872, which finally established rules under which a party claiming mining ground might hold and possess it, and rendered a compliance with the law imperative.

The case of *Campbell* v. *Rankin*, cited, is simply that, in an action *quare clausum fregit* for damages, possession is *prima facie* evidence of title sufficient for a recovery against a mere trespasser — a proposition we do not dispute.

But this is not an action of trespass *quare clausum;* nor is the respondent a naked trespasser. Section 2324, quoted by appellants, is still wider from the mark than the authorities above cited. That section expressly ex-

cepts all cases where there are adverse claims, and can cut no figure in this case.

The case in 15th Nevada, 383, simply holds that stakes and stone monuments, being put at each corner of the claim, and at the center of each of the end lines, were a sufficient marking, and that a record was not required by the Nevada laws.

Our law did require a record, and the mining laws of the United States distinctly specify what that record should contain.

We deny the proposition of appellant that any presumption arises in a case like this in favor of appellant. The respondent enters into possession of his claim, and applies for title under the act of 1872. The appellant seeks, through the courts, to defeat that application. If there are any presumptions, they certainly are not in favor of the adverse claimant.

A comparison of appellant's brief in this case with that in the Hoyt case, where he is the respondent, will show a striking contrast. We contend that (if the case here is presented in such way as to justify this court in looking at the questions raised by appellant) the court below did not err in excluding the record of the Alta lode. It does not contain any of the requirements of the statute. It is indefinite and uncertain, and from it the boundaries could not be readily traced, if at all. The record of a claim is required to contain such a description of the claim, by reference to some natural object or permanent monument, as will *identify* it, and so that its boundaries can be readily traced. Sec. 2324; *Gleason* v. *Martin White Company*, 13 Nev. 464. No courses, no distances, no description of the claim, or reference to any natural object or permanent monument, is given. It claims one thousand three hundred feet westerly and two hundred feet easterly from discovery; thence to stake "A" three hundred feet, etc. At what point does it commence? In what direction does it run? Could any one trace it from

the notice on record? From the notice and description a plat of ground of an endless variety of shapes and directions could be formed; and all that would be necessary for a claimant to obtain title would be to get a pliant surveyor to make the survey to suit his purposes.

If the Alta lode was not defined as to limit, as we contend, then the question of possession cannot arise, as there could be no possession unless of a portion actually possessed and worked. *Atwood* v. *Tricott,* 17 Cal. 42; *Sears* v. *Taylor,* 4 Col.

By reference to the record in this case it will be seen that it is an appeal from the judgment above. There is no statement on appeal. The only thing that purports to be a statement is a paper, dated May 24, 1881, to which a certificate of the judge is appended, following which is a notice of motion for new trial, filed on the same day, and a motion for new trial, filed May 27, 1881, which was overruled.

The appellant, therefore, under the California decisions, is limited to the judgment roll alone, of which the statement on motion for new trial forms no part, no appeal having been taken from the order overruling it, leaving nothing but the pleadings to be reviewed. *Thompson* v. *Connolly,* 43 Cal. 636; *Burdge* v. *Gold Hill Mining Co.* 15 Cal. 198; *Reynolds* v. *Lawrence,* id. 361.

Again, no errors are assigned in the statement, and none are anywhere assigned, except in the notice and motion for new trial, which have no place in the transcript, it being only an appeal from the judgment. *Bennett* v. *Pacheco,* 37 Cal. 408; *Crosset* v. *Whalan,* 44 Cal. 200.

Again, even if there had been a statement on appeal, embodying the precise matters set forth in the statement on motion for new trial, it would be insufficient to authorize the court to take notice of the evidence "proposed" to be introduced. See Record, p. 25.

The offer does not disclose by whom appellant proposed to prove the matters mentioned, or that the wit-

ness or witnesses were present; nor were any questions. asked.

We understand it to be the inflexible rule that a party offering to prove facts must present his witness, and ask his questions, if he wishes to avail himself of an exception to the overruling of a question, or the exclusion of evidence.

In this case no such course was pursued.

As to the instruction asked for by appellant, there is nothing in the record which saves any question on it. Nor does appellant make any point thereon in his brief.

WADE, C. J.    Plaintiff, to maintain his action, offered in evidence the record of his declaratory statement and location of the Alta lode claim, which is in the words and figures following, to wit:

## "DECLARATORY STATEMENT.

### "*Alta Lode.*

"This lode is situated in Ten Mile Mining District, Lewis and Clarke county, Montana territory, discovered July 26, 1876, by J. H. Russell, and he hereby gives notice that he has located the above named lode under the provisions of the act of congress, May 10, 1872, and claims 1,300 feet westerly and 200 feet easterly from discovery; thence to stake A 300 feet, to stake B 200 feet, to stake C 390 feet, to stake D 1,500 feet, to stake 600 feet, to stake A 800 feet, bounded on the north by the south lines of the Mammoth and Free Speech lodes, and on the south by the north lines of Eureka and Fairview lodes."

Which was properly verified.    Defendants objected to the introduction of this declaratory statement in evidence, which was sustained and exception saved, and this action of the court is the error complained of.

The act under which that location was made requires that the location be distinctly marked on the ground, so that its boundaries can be readily traced, and that the

record thereof shall contain the name of the locator, the date of the location, and such a description of the claim located, by reference to some natural object or permanent monument, as will identify the claim.

We held in the case of *Hauswirth* v. *Butcher*, at this term, that such a location carried with it a grant from the government to the person making the same, and that the record must contain such a description of the claim located, by reference to some natural object or permanent monument, as will identify it. We affirm that decision. The record of location must contain a reference to such objects or monuments. But it is not for the court to say, by merely looking at a record or declaratory statement, what are or what are not permanent objects or monuments; that is matter of proof. A stake or a stone of the proper size, and properly marked, may be a permanent monument. A declaratory statement or record thereof, with a reference to permanent stakes or monuments, which did not exist as a fact on the ground, would not be good, while a defective description in the record or declaratory statement might be cured if the stakes or monuments on the ground identified the claim. .

The location in question was bounded on the north by the Mammoth claim, and on the south by the Eureka and Fairview claims. It was not for the court to say, by simply looking at this declaratory statement, that the boundaries of these claims did not sufficiently describe and identify the claim of plaintiff on the northern and southern boundaries. These claims may have been held by patents from the government with corners and boundaries so definite and certain as to leave no question concerning the location of the plaintiff's claim. Whether this was so or not was matter of proof, and the plaintiff ought to have had an opportunity to have supported and made certain his declaratory statement by competent testimony.

The judgment is reversed and cause remanded for a new trial.             *Judgment reversed.*