UPTON ET AL., respondents, *v.* LARKIN ET AL., appellants.

*Evidence concerning the locality of the discovery shaft of a mine held competent.* — In the case at bar, the plaintiffs claimed that the discovery of the vein of the defendants' mine had been made within the limits of an adjoining location, to which a patent had subsequently been obtained. Said adjacent claim had been located as a two-hundred-foot claim. Before patent, however, but after the alleged discovery of defendants' mine, its boundaries had been extended. Defendants objected to evidence admitted as to the location of the original boundary lines of said claim, on the ground that, the claim having been patented, no dispute could be raised as to its boundaries. *Held,* that the evidence was competent.

MINES. — *A notice of location need not contain a detailed description of the claim.* — Plaintiffs' notice of location recited that the west-end corners were marked by pine-trees. The evidence disclosed that the location was distinctly marked on the ground, but that it was made by stakes set at the west-end corners by the locators, instead of by pine-trees. The notice referred to another claim as a permanent monument. *Held,* that the said notice was sufficient both under section 2324, Revised Statutes of the United States, and under the law of Montana (sec. 1477, div. 5, Comp. Stats. Mont.), and that such a description of a claim in a notice of location as will identify it with reference to some natural object or permanent monument is all that is required.

ID. — *A prior discovery is necessary to a valid location.* — *Held,* in the case at bar, that it was proper to exclude evidence as to the width and richness of the vein as shown by work subsequent to discovery; and that no discovery made after a location will make that location valid.

ID. — *A portion of a discovery being on an adjoining claim will not render a location invalid.* — A portion of the discovery of plaintiffs' mine was on an adjoining claim: *held,* that this fact did not render their location invalid.

ID. — *An instruction held sufficient in connection with others given.* — Instruction No. 1 given at the request of the plaintiffs was as follows: "To make a valid location of a lode mining claim, there must be a discovery, within the limits of the claim located, of a vein or crevice of quartz or ore, with at least

one well-defined wall on a lead, lode, or ledge of rock in place, containing gold, silver, or other valuable mineral deposits," etc. *Held*, that said instruction, taken in connection with the others granted, was not erroneous.

*Appeal from District Court, Silver Bow County.*

KNOWLES & FORBIS, and THOMAS L. NAPTON, for the appellants.

If the discovery was on the Shannon patented ground, or off of it as patented, but on it at the date of the location of the Shannon, the location was void; and if owners of the Shannon were allowed to patent the surface so as to include the discovery of the Comanche, then the location and ownership of the same by plaintiffs was lost, and they could not recover in this action. See *Upton* v. *Larkin*, 5 Mont. 600; *Gwillan* v. *Donnellan*, 115 U. S. 45; *Belk* v. *Meagher*, 104 U. S. 279 et seq. As to the sufficiency of the declaratory statement or location notice, could a stranger go upon the ground with this notice calling for pine-trees, and find the ground which Upton says he had staked with stakes, describing them? The location notice is void, and the supreme court of Colorado so holds. *Pollard* v. *Shively*, 5 Col. 309; see *Gilpin County M. Co.* v. *Drake*, 8 Col. 589, 590. Instruction No. 1 is erroneous under the act of 1872. It instructs that if a lead or load is found or discovered within the limits of the ground located, which contains gold or silver or other valuable mineral deposits, that this is what the law requires. But the law requires, in addition to the discovery of such deposits, that they must be such as to make the lead valuable. *Deffeback* v. *Hawke*, 115 U. S. 392.

W. W. DIXON, and ROBINSON & STAPLETON, for the respondents.

While this cause comes up to this court on appeal from the order of the court below overruling a motion

for a new trial, and from the judgment, it can be heard
on the former, and the latter cannot be considered as to
anything except the judgment roll, for the reason that
there is no statement on appeal, nor any stipulation as to
using the statement and motion for a new trial as a
statement on appeal. The point is made that the west-
end corners are marked by posts, when the notice calls
for trees. The office of a record of a location is to direct
attention to the *locus*, and the law requires that the
notice shall describe the claim with reference to a natural
object or permanent monument. There is no law re-
quiring such record to describe or designate by what
the boundaries shall be marked. *Stype* v. *Clark*, 7 Col.
618. When the record directs to the place of location,
and it is found, then the boundaries as marked show the
lines and exterior boundaries, and it is wholly imma-
terial whether the objects, posts, or trees stated in the
record are the same as found on the claim, or not,—such
designation in the record is surplusage. Besides, whether
or not the claim is distinctly marked on the ground is a
question for the jury. *Anderson* v. *Black*, 70 Cal. 226.
Appellants claim that the verdict and findings of the jury
are not supported by the evidence. It is a rule of law,
well established, that when there is a conflict of evidence
the appellate court will not disturb the findings. *Lincoln*
v. *Rodgers*, 1 Mont. 217; *Ming* v. *Truett*, 1 Mont. 322;
*Anderson* v. *Black, supra.*

BACH, J.    This suit was begun under the Revised
Statutes of the United States, section 2326, to determine
the right of adverse claimants to certain mining prop-
erty situated in Silver Bow County, Montana. The de-
fendants had filed an application for patent to mining
ground, including the ground in controversy, as the
owners of the Smelter lode claim; the plaintiffs "ad-
versed" the application, and thereafter commenced suit

as required by the United States statute for adverse
claimants, alleging title to the premises under a claim
known as the Comanche lode claim. The defendants
deny plaintiffs' title, and claim title to the ground in
controversy as part of the Smelter lode claim. Trial
was had in the district court, verdict was for the plain-
tiffs, and judgment was entered accordingly. A motion
was made for a new trial, which was denied. The appeal
is taken from the judgment, and from the order denying
a new trial. We will consider in their order the alleged
errors relied upon by the appellants, at least so far as the
record will permit.

Counsel for appellants, in their argument, admit that
the record contains much useless matter; and after in-
spection of the record, we are free to say that we agree
with them. David N. Upton was the first witness called,
and he was asked the following questions, to which he
made answer: " *Question.* Did you know where the cor-
ners and boundary lines of the Shannon lode claim were
at that time? [referring to the time of the discovery and
location of the Comanche lode claim.] *Answer.* Yes, sir.
*Q.* Show where they would be on this map [referring to
a map already in evidence]. *A.* The Shannon is a new
location of the old Colusa, located by two-hundred-feet
claims. Here, on the line of the Shannon [now refer-.
ring to the map], at that time the lines of the Shannon
were right up here [referring to the map]. Objected to
by attorney for defendants, on the ground that the Shan-
non is a patented claim now, and it is not open to any
dispute or controversy as to where the boundaries were at
that time. Plaintiffs' attorneys say that it does not yet
appear that the Shannon is a patented claim. Where-
upon defendants' counsel desired to ask the witness if he
did not know that the Shannon claim was patented, and
offered to introduce then and there the patent to the
Shannon claim. The court overruled the defendants'

objection; to which ruling the defendants then and there duly excepted. The witness then proceeded to point on the map, and testify as to the position of the Shannon corners and boundaries at the time he made the location of the Comanche lode claim, and stated that the position of the Shannon corners at that time would bring the south line of the Shannon about one hundred feet north of the discovery shaft of the Comanche. To the admission of said testimony the defendants then and there objected, but it was allowed to go to the jury; and to which ruling of the court the defendants then and there excepted." The foregoing is contained in bill of exceptions No. 1, and it is the first error noted in the brief of counsel for appellants. It is strange that the map referred to should be entirely omitted from the record, which is so voluminous, and which contains so much that is irrelevant and redundant. It certainly would be in line with the authorities if we refused to consider this error, for we are deprived of much that may have guided the court below. As far as the record shows, we find no error in the ruling of the court below. It was certainly competent for the plaintiffs to prove the discovery upon which they based their claim. They could do this by fixing its distance from any object. Upton swore that the old south lines of the Shannon lode were one hundred feet distant north from his discovery. It was not in accordance with the orderly examination of the witness to allow the defendants to interrupt their testimony, and to interject cross-examination in the way proposed. The proper and usual practice was for the defendants to show, by cross-examination, or by testimony in defense, that the patented lines of the Shannon lode were south of the old lines, and took in the discovery. That was part of defendants' case.

The second alleged error refers to the admission of the

notice of location in evidence. The ground of objection is as follows: The evidence of the plaintiffs having shown that Upton and his co-locator, Turner, discovered a vein., and made a location by putting up stakes at the west-end corners, the defendants objected to the admission of the notice of location, because it was therein declared that the west-end corners were marked by pine-trees. The objection was properly overruled. The statutes of the United States do not require the recording of any notice of location. All that is said upon that subject will be found in section 2324, which provides as follows: "The location must be distinctly marked on the ground, so that its boundaries can be readily traced. All records of mining claims hereafter made shall contain the name or names of the locator or locators, the date of the location, and such a description of the claim or claims located, by reference to some natural object or permanent monument, as will identify the claim."

The Montana statute makes no further requirement in this respect. The statutes of the United States require only "such a description .... by reference to some natural object or permanent monument,"—that is, either one or the other; but whichever is chosen, it must be "sufficient to" identify the claim. The notice objected to did refer to a permanent monument, to wit, "the Gambetta lode claim on the east." Such a reference has been held to be sufficient by this court. See *Russell* v. *Chumasero*, 4 Mont. 309. Whether or not this was such a description as would identify the claim is a question for the jury. See *Russell* v. *Chumasero*, *supra; Anderson* v. *Black*, 70 Cal. 226. The notice, then, contained a description by reference to a permanent monument. It contained more, also; but the claim itself was distinctly marked on the ground, — so distinctly that "its boundaries can be readily traced," as required by the statute. The location no-

tice contains a declaration that a copy thereof is posted at the discovery shaft (and the evidence is to the same effect). It also declares that the claim adjoining it is the Gambetta lode claim on the east; and then it contains the following description of the boundaries of the claim located, as follows: "Beginning at a stake situated nine hundred feet in a southeasterly direction from discovery shaft, and marked 'southeast corner of the Comanche lode claim'; running thence westerly fifteen hundred feet, to a pine-tree marked 'southwest corner of the Comanche lode claim'; thence north six hundred feet, to a pine-tree marked 'northwest corner of the Comanche lode claim'; thence easterly fifteen hundred feet, to a stake marked 'northeast corner of the Comanche lode claim'; thence south six hundred feet, to the place of beginning." As we have already stated, there is no statute requiring a description of the claim to be contained in the notice of location. All that is required by the United States statute is that the claim shall be distinctly marked upon the ground, so that its boundaries can be readily traced. The court charged the jury that such was the law, and the jury, by their verdict, have declared that the law was complied with, to wit, that the claim was marked as by law required. The mining laws are beneficial laws. They should not be, and are not by the United States supreme court, construed technically. The history of the laws shows that they were intended to afford to the miner the most simple method possible of obtaining title to mineral ground. When metal was first discovered in this country, the miners made their own laws, known as "custom of miners," and which may properly be called the common-law of mining. These laws received the sanction of the state legislatures and of the courts. Finally, Congress, recognizing the vast importance of the mineral wealth of this western country, as well to the nation as to the individual,

and being desirous of encouraging the industry to its fullest extent, wisely took cognizance of the subject, and enacted the mineral land laws, which are as simple as the custom of miners; indeed, the fundamental principles of the one are identical with those of the other, to wit, discovery, appropriation, and development. In fact, there is little difference beeween the custom of miners and the mineral laws, as far as the former could go; that is to say, up to that point where the miner seeks to obtain his patent. The law as passed by Congress contains no extra condition to the possessory right (see *Jennison* v. *Kirk*, 98 U. S. 453); but it gave to the miner what he had not had before, the right to acquire the absolute title to the land through a United States patent to the same. Congress was enlightened upon this subject by those well versed in the necessity arising from the nature of the mining industry. It recognized that the rules of miners were the result of experience, and the device of fair-minded men. It wisely followed rules which were best suited to those engaged in this industry, which recognized that the vast majority of the miners were not educated, and which were to govern men remote from business circles, where alone legal advice could be had. What are the two chief requirements of the statutes as far as the possessory right is concerned? 1. Discovery; 2. The marking of the claim upon the ground so that the boundaries can be readily traced. The first requirement is made for the benefit of the United States, so that land cannot be acquired under this law until its character is first ascertained to be mineral; the second is made in order that those going upon the ground may know that others have acquired and claim title thereto. Certainly, these steps are very simple; the intricacies are those found by the courts of the states and territories wherein mineral lands are situated. The supreme court of the United States has,

time and again, cleared away a vast amount of techni-
cality sought to be thrown around these laws, as a careful
perusal of the decisions of that court will show. Counsel
for appellants have cited cases from the state of Col-
orado upon this point; but those cases depend upon a
statute of that state which requires that "such surface
boundaries shall be marked by six substantial posts,
hewed or marked on the side or sides which are in
towards the claim, and sunk in the ground, to wit, one
at each corner, and one at the center of each side line."
We have no statute such as that, or requiring any stake
whatever.

The next error specified is, that one of the defendants,
Larkin, was not allowed to testify as to the width and
richness of the vein, as shown by work subsequent to
the location of the Smelter lode. We think that the
objection was properly sustained. Whether or not the
defendants were entitled to recover depended upon dis-
covery before location. No discovery made after loca-
tion would make that location valid. Such would seem
to be the rule stated in the opinion, delivered upon a
former appeal in this case (see *Upton* v. *Larkin*, 5 Mont.
600), the present appellants then insisting that such was
the rule of law; and in fact, the appellants requested the
court below to charge the jury that such was the law.
(See instruction 5, given at defendants' request, as fol-
lows: "The discovery upon a quartz claim must be
made at the time of the location, and before the record
of the claim is made.") The court, upon the former ap-
peal, cited an instruction given by Mr. Justice Sawyer
in the case of *Mining Co.* v. *Mining Co.*, 11 Fed. Rep.
666, and the court adds: "This instruction, if it is the
law, would be applicable to a case where a person enters
upon the public mineral lands, and discovers what he
supposes to be a vein or lode, and makes a location by
virtue of such discovery before he has discovered the

true vein or lode; and subsequently, and before any other person has acquired any rights, makes such discovery." But in the case at bar, the location of the Smelter lode was made on the twenty-third day of May, 1881; a patent was applied for prior to the seventh day of March, 1882; this action was commenced on the seventh day of March, 1882; and this evidence was offered at the present trial of this cause in September, 1886. Certainly the appellants could not obtain a patent upon a discovery made after application. That they cannot show work done after bringing of suit has been held in *Moxon* v. *Wilkinson*, 2 Mont. 421. The offer made by appellants was not confined as to date, and may as well have been after suit was brought as before. When this offer was made, there had been no attempt to deny that appellants had discovered a vein before their location; and the appellants did not seek to introduce it in order to make valid a void location, as referred to in the opinion of the learned judge commenting on the instruction of Mr. Justice Sawyer, *supra.* The purpose of the offer is evident; it was to enlist the sympathy of the jury. That the defendants did not suffer any wrong by the exclusion of this testimony is further shown by the finding of the jury that the defendants did discover, " at the time of their location, within the limits of the Smelter lode, a vein with at least one well-defined wall."

The next error alleged is, that the evidence shows that the Shannon lode claim, as patented, includes the discovery of the Comanche lode claim; and counsel for appellants cite *Gwillan* v. *Donnellan*, 115 U. S. 45. In that case, the discovery relied upon by the plaintiffs was entirely included within the boundaries of a claim that was patented after the plaintiffs' location; but in the case at bar, testimony was introduced by plaintiffs tending to show that only a portion of plaintiffs' discovery

shaft is included within the Shannon claim, and that the other portion is included within the lines of the Comanche lode claim.   The jury was instructed as to the law upon this point, at appellants' request.   They were told that the discovery must have been made " upon the claim located; but if the ground upon which the claim is located is appropriated ground, — that is to say, ground that has been previously located, and is at the time held as a quartz lode claim by others, — then such a discovery will not sustain a location, and any location made by virtue thereof will be void.   And if you find in this case that the discovery of the Comanche lode claim was made upon the Shannon lode claim, then you will find that the location of the Comanche lode was void, and the plaintiffs acquired no rights thereunder."   And there were other instructions to the jury, to the effect that if the discovery shaft of plaintiffs was within the Shannon lode claim as patented, then plaintiffs could not recover.   The jury find specifically that a portion of the discovery is south of the south boundary line of the Shannon claim as patented, and within the lines of the Comanche as located.   There is evidence to sustain the finding, and such a finding of fact is sufficient to show a valid discovery; therefore the verdict of the jury cannot be disturbed upon that ground.

The next error alleged is that the court erred in instructing the jury in the language as contained in plaintiffs' requests numbered 1 and 2; and appellants claim that these are not the law under any circumstances, and that they are particularly against the law as applied to the facts of this case.   Both the plaintiffs and the defendants presented numerous requests to charge, which were given by the court as instructions to the jury. They thus became the directions of the court, and must be construed together.   The testimony shows that the Comanche lode claim was located in January, 1879; and

that in June, 1879, the Shannon lode claim, which lies north of the Comanche, was patented. The south line of the Shannon lode, as the testimony shows, runs directly through the discovery shaft of the Comanche, in such a manner that the shaft, with the exception of a strip about nineteen inches wide, is included within the Shannon lode. Plaintiffs filed no adverse claim at the time that application was made for said patent. There is testimony showing that the vein upon which the discovery of the Comanche is based dips from the north to the south. Such are the facts. Instruction No. 1 reads as follows: "To make a valid location of a lode mining claim, there must be,— 1. A discovery, within the limits of the claim located, of a vein or crevice of quartz or ore, with at least one well-defined wall on a lead, lode, or ledge of rock in place, containing gold, silver, or other valuable mineral deposits; 2. The location must be distinctly marked on the ground, so that its boundaries may be readily traced; 3. A declaratory statement in writing, under oath, describing such discovery and location, with such a description of the claim located," etc. The rest of the instruction is not complained of. No. 2 reads as follows: "If the jury find from the evidence that plaintiffs, Upton and Turner, did, on or about the nineteenth day of January, 1879, make a valid location of the Comanche lode claim, as described in the foregoing instruction, and that plaintiffs, prior to March 7, 1882, acquired the title of said Turner, and that on the seventh day of March, 1882, plaintiffs were in possession of said Comanche lode claim, you will find for plaintiffs." The position of the appellants is, that the jury are led to suppose by instruction No. 1 that the original discovery would be sufficient, even though it was upon ground which was afterwards patented to others than the plaintiffs, or those under whom they claim. Turning to instruction No. 8, given at plaintiffs' request, we find that

the word "discovery," which in mining has a technical meaning, is defined to the jury, who are told that "one may discover a vein within the limits of ground claimed; yet if the top or apex of such vein lies without his claim, he will acquire no right thereto." In another instruction at defendants' request, the word "apex" is defined to the jury. And again, in No. 6, given at defendants' request, the jury are instructed directly upon the point made by appellants, as follows: "The ownership of or title to a vein is determined by its top or apex; and although one may discover a vein within the limits of ground claimed, yet if the top or apex of such vein lies without his claim, he will acquire no right thereto. And in this case, if plaintiffs discovered a vein, the top or apex of which lies within the limits of the Shannon lode claim, as the same is described in the patent issued to Charles X. Larabie, then the plaintiffs can claim no rights by virtue of such discovery, although such vein may so far depart from a perpendicular, in its downward course, as to enter the ground claimed as the Comanche lode claim." We think that the jury are fully instructed upon the law of discovery, as applied to the facts of this case. It is true that plaintiffs' instruction 1, by itself, does not contain all the law as applicable to the case; but taken in connection with other instructions given, it does state the law fully. It is almost identical with No. 1, given at defendants' request. As to instruction No. 2, it refers to all the issues in the case, as fully explained elsewhere, and tells the jury that if they find all of the issues in favor of the plaintiffs, then the verdict must be for the plaintiffs.

The next alleged error is, that the evidence shows that the vein of plaintiffs runs crosswise of their claim, and not lengthwise. If we could find from the record that such was the fact, it would be doubtful whether or not

we could reverse the judgment on that ground. It would seem to be the opinion of the court in *Argentine Co.* v. *Terrible Co.*, 122 U. S. 478, and *Mining Co.* v. *Tarbet*, 98 U. S. 463, that the only result in such a case is, that the so-called end lines become the side lines of the claim, and the side lines become the end lines. But we are not called upon to decide that point. The jury find that the general course of the vein corresponds with the length of the claim; and we submit that it is impossible for us to say that the evidence did not warrant that finding, for the record presents the testimony in such a way that it is impossible for us to discover its meaning. The transcript contains 151 pages of testimony; but counsel on both sides, in their brief, call our attention to specific portions thereof upon all points raised upon this appeal, and it is fair to presume that our attention is thus called to all testimony that is relevant to questions before us. Of these pages there are but 37. Remembering the unnecessary length of this record, and that, as is admitted by counsel for appellants, it contains much that is irrelevant, it is difficult to understand why matters of great importance, and which undoubtedly assisted the judge and jury below, should be omitted from the record entirely. Upon the question of the direction of the vein, we are referred by appellants to the testimony of witness Baker, among others, as found on page 31. We will give a few extracts from this testimony, first stating, however, that the witness was calling the attention of the jury to a map. The witness says: "These little lines represent the bottom. That is where the top of the shaft is now. This line would show somewheres about where it crosses at the present time. This is the opening down at the bottom. This represents the ground-plan at the bottom of the shaft. This is a horizontal projection of the bottom of the shaft." And in cross-examination, as follows: "This being the south line of

the Shannon, and this being the surface, it is about thirteen inches from there here. . . . . This black line represents it at the last trial, but this is cut clear through the tunnel." There is no map in the transcript. It is impossible for us to know what the witness means by the expressions " this," " these little lines," " this black line," or to know where " these little lines " and " this black line " may be in reference to the surface of these conflicting claims. The testimony selected as above may be somewhat more unintelligible than the rest; but in most cases it is a difference of degree, and not of kind. As to the direction of the vein, all that clearly appears from the record is: 1. That the notice of location and testimony show that the side lines of the Comanche lode run in an easterly and westerly direction; 2. That there is testimony showing that the vein runs in a similar direction; and 3. That the finding of the jury is, that the direction of the vein is south of east and north of west. We do not object to long records when they are necessary to present to this court a full understanding of the case; but we do object to transcripts which counsel, directly and by implication, admit contain irrelevant matter, but omit such an essential as a map from which a witness is testifying.

Judgment and order denying a motion for a new trial are affirmed, with costs.

*Judgment affirmed.*

McCONNELL, C. J., and McLEARY, J., concur.