TIGGEMAN, Appellant, v. MRZLAK, Respondent.

(No. 2,704.)

(Submitted October 27, 1909.   Decided November 12, 1909.)

[105 Pac. 77.]

*Mines and Mining—Adverse Suit—Declaratory Statements— Evidence—Forfeiture—Burden of Proof—Monuments — Description—Sufficiency.*

Mining Claims—Metes and Bounds—Declaratory Statement—Evidence.
1.   While section 1477, Fifth Div., Compiled Statutes 1887,—the statute in force at the time the location in controversy was made,—did not require the declaratory statement to contain a description of the metes and bounds of the claim, yet where it did contain such a description, and, the monuments having entirely disappeared, there were not any evidences from which it was possible to determine the boundaries of the claim, located about seventeen years before the controversy arose, the trial court did not err in holding that the descriptive calls of distances in the sworn statement were controlling, rather than the oral testimony of the locator as to his recollection of them.

Same—Discovery—Sufficiency.

2. A discovery shaft, through the center of which one of the end lines of the claim ran, was sufficient to support the location; and the fact that an adjoining claim was thereafter so laid out as to overlap the former and include the shaft, could not impair the prior location, but operated only to avoid the subsequent location to the extent of the conflict.

Same—Discovery—When Void.

3. A lode location, the discovery upon which was made within the boundaries of an adjoining prior location, was void.

Same—Forfeiture—Burden of Proof.

4. The burden of proving, by clear and convincing evidence, the forfeiture of a quartz lode mining claim for nonperformance of the annual representation work, rests upon him who alleges it.

Same—Discovery—When Void.

5. Where a location was based upon a discovery within the confines of one of an alleged contiguous group of three claims, and therefore invalid, the question whether work done upon one of the group represented all of them was of no concern to the locator of the invalid claim.

Same—Declaratory Statement—Description of Claim—Sufficiency.

6. A description of a lode mining claim, in the declaratory statement, with reference to natural objects or permanent monuments, which, when reasonably construed, in view of the surrounding circumstances, imparts notice to subsequent locators that the particular portion of ground has been located, is sufficient for the purpose of identification.

Same.

7. A declaratory statement referred, among other things, to a race-track, a little over a mile from the location, as a means of identification. The track at that time (about seventeen years before trial of an adverse suit) was an inclosed and substantial structure, and its location was then, as well as after its removal and when the trial was had, well known. Held, that the trial court did not err in its decision that the reference was sufficient.

*Appeal from District Court, Silver Bow County; Geo. M. Bourquin, Judge.*

ACTION by John H. Tiggeman against George Mrzlak. From a judgment in part for plaintiff, and from an order denying him a new trial he appeals. Modified and affirmed.

There was a brief and oral argument by *Mr. E. B. Howell,* and *Mr. L. P. Forestell,* in behalf of Appellant.

Patented and unpatented adjoining claims are monuments and so are mining shafts. And such a monument is sufficient to identify a claim. (*Upton* v. *Larkin,* 7 Mont. 449, 17 Pac. 728; see, also, *Garfield etc. Min. Co.* v. *Hammer,* 6 Mont. 53, 8 Pac.

153; *Hammer* v. *Garfield etc. Min. Co.,* 130 U. S. 291, 9 Sup.
Ct. 548, 32 L. Ed. 964; *Riste* v. *Morton,* 20 Mont. 139, 49 Pac.
656; *Dillon* v. *Bayliss,* 11 Mont. 171, 27 Pac. 725; *Gamer* v.
*Glenn,* 8 Mont. 371, 20 Pac. 654.)    Posts are permanent monu-
ments.    (*Credo Min. Co.* v. *Highland Min. Co.,* 95 Fed. 911.)
A pile of rocks and stakes, two or three inches in diameter, is a
sufficient compliance (*Temescal Oil Co.* v. *Salcido,* 137 Cal. 211,
69 Pac. 1010), as is also a blazed tree.    (*Allen* v. *Dunlap,* 24
Or. 236, 33 Pac. 675.)

Plaintiff proved that he was in possession of the ground in
controversy for more than ten years prior to the date of the
defendant's alleged locations, claiming the same under his lo-
cations, continuously, and had worked the same.    He was there-
fore entitled to a patent to the ground.    (*Belk* v. *Meagher,* 104
U. S. 279, 26 L. Ed. 735; *Altoona Quicksilver Min. Co.* v. *Integral
Min. Co.,* 114 Cal. 105, 45 Pac. 1047; *Harris* v. *Equator Min. Co.,*
8 Fed. 863, 3 McCrary, 14; *Farrell* v. *Lockhart,* 210 U. S. 142,
28 Sup. Ct. 681, 53 L. Ed. 994.)

*Mr. George F. Shelton,* and *Mr. Charles A. Ruggles,* filed a
brief in behalf of Respondent; oral argument by *Mr. Ruggles.*

The validity of all of the three locations claimed by the plain-
tiff may be seriously questioned, for the reason that no *bona fide*
reference was made in any of the location notices to any natural
objects or permanent monuments, so as to show a compliance
with section 2324 of the Revised Statutes of the United States.
The failure to name a natural object or permanent monument
cannot be aided by evidence *aliunde,* and in the absence of such
reference in the recorded notice the location is void.    (*Drum-
mond* v. *Long,* 9 Colo. 538, 13 Pac. 543.)

Unless claims are contiguous, the provisions of section 2324,
United States Revised Statutes, allowing work on one claim to
represent other claims held in common ownership, do not apply.
(*Chambers* v. *Harrington,* 111 U. S. 353, 4 Sup. Ct. 428, 28 L.
Ed. 452; *Jackson* v. *Roby,* 109 U. S. 444, 3 Sup. Ct. 301, 27 L.
Ed. 990; *St. L. Smelting etc. Co.* v. *Kemp,* 104 U. S. 636, 26

L. Ed. 875; *Power* v. *Sla* (1900), 24 Mont. 243, 61 Pac. 468.) Where a claimant seeks to show that work done on one of several mining claims is done to represent them all, he must positively show that such work and expenditure on the one is actually for the benefit of all. (*Jackson* v. *Roby, supra; Chambers* v. *Harrington,* 111 U. S. 350, 4 Sup. Ct. 428, 28 L. Ed. 452.) The plaintiff actually never showed the existence of a vein that would justify a location of the three claims along a supposed common vein, let alone his failure to show that work on the Walstadde would serve to benefit the Gold Star and the Black Cloud. An imaginary or conjectural existence of a vein or lode is not sufficient to found a location. (*King* v. *Amy etc. Min. Co.,* 152 U. S. 227, 14 Sup. Ct. 510, 38 L. Ed. 419.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The defendant, claiming to be the owner of mining ground situated in Summit Valley unorganized mining district, in Silver Bow county, under locations designated as the Vienna and Croatian quartz lodes, made his applications to the United States for patents therefor through the land office at Helena. The plaintiff, claiming a prior right to portions of the ground under each of three locations designated as the Walstadde, Gold Star, and Black Cloud, brought this action to determine the right to the possession of the portions in controversy in pursuance of the requirements of the federal statute. The defendant's claims were located on August 6, 1902, and both declaratory statements were recorded on October 4th. Subsequently two amended locations for each claim were made and recorded, the last being recorded on February 26 and 28, 1907, respectively. The purpose of the amendments was to supply with more definiteness the recitals required by the Montana statute. The plaintiff's locations were all made on November 5, 1891. The declaratory statements were recorded on November 18th, in the following order, as shown by the file-marks of the clerk and recorder:

The Black Cloud first, the Gold Star second, and the Walstadde third.

The evidence introduced by the parties was confined to two issues made by the pleadings, to-wit: Whether the acts done by the plaintiff in the way of marking the boundaries, and the references made in the declaratory statements to natural objects or permanent monuments to identify the claims, were a sufficient compliance with the federal statute (U. S. Comp. Stats. 1901, sec. 2324) to render his locations valid; and whether they were subject to forfeiture and relocation by the defendant because the required representation work had not been done upon them for the year 1901. The subjoined plat is explanatory of the contentions of the parties.

The plaintiff's claims lie easterly and westerly along a ridge, or backbone, on the west slope of the mountain. The general course of the vein in the Walstadde is indicated by the line of the tunnel, and is supposed to traverse all of the claims. Defendant's claims lie on the southerly slope of the ridge. All the representation work done by plaintiff prior to the location of defendant's claims had been done through a shaft and drift upon the Walstadde, near the point marked "Disc. Shaft"; the purpose being, as he stated, to develop and exploit all the claims from this point as a contiguous group. After this time he converted the drift into a tunnel by driving it to the surface toward the west. The shaft has since then been used for the purpose of ventilation only. At the time of the trial the tunnel had been driven into the mountain toward the east, to the extent of several hundred feet. With reference to the location of plaintiff's claims after a discovery had been made upon each of them, his

own testimony showed—and in this particular he is supported by the recitals in the declaratory statements and the file-marks thereon—that he proceeded as follows: Beginning with the discovery on the Black Cloud he measured with a tape-line 500 feet along the strike of the vein toward the west, thus fixing the end line of the claim in that direction. Having determined the location of this line, he then proceeded to place his corner posts so as to make the claim 600 feet in width and 1,500 feet in length, beginning his measurement from the middle point of the west end line. He then located the Gold Star, beginning his measurements from the point at the west end of the claim, marked on the plat "Disc. Shaft," taking the full distance of 300 feet on either side of the vein, and 1,500 feet along its strike, supposing the west end line of the Black Cloud to be a common line with the east end line of the Gold Star. The course pursued with the Walstadde was substantially identical with that pursued with the Black Cloud. In the declaratory statement of the Black Cloud the vein is described as extending in an easterly and westerly direction, and the portion of it claimed is 500 feet in a westerly direction from center of discovery shaft, and 1,000 feet in an easterly direction. The boundaries are stated as follows: "Beginning at the discovery shaft, then 500 feet west, then 300 feet south to a post, then 1,500 feet east to a post, then 600 feet north to a post, then 1,500 feet west to a post, then 300 feet south, to place of beginning." The claim is described as being situated in Summit Valley mining district, Silver Bow county, about one and one-half miles east from the racetrack, with the Whippoorwill claim adjoining it on the north. In the declaratory statement of the Gold Star the boundaries are described as in that of the Black Cloud; the initial course being 300 feet south from the discovery shaft. The direction of the vein is the same. Reference is made to the racetrack, at a distance of one and one-quarter miles to the west, to the Bob White claim on the north, and to the Walstadde on the west. In the declaratory statement of the Walstadde the claim is for 800 feet of the vein easterly from the discovery

shaft and 700 feet westerly. The initial course is given as 750 feet from the discovery, southwest to a post. From this point the lines are mentioned in the same order as in the other statements. Reference is made to the Silver Cliff claim on the north, and to the racetrack at a distance of one and one-quarter miles to the west. Plaintiff testified that he marked the boundaries of all the claims with substantial posts set in the ground, one at each of the four corners of each claim. His testimony and that of other witnesses further showed that, when he came to make his survey in order to prepare his adverse claim, there were no monuments on the ground, nor any evidences, except the discovery shafts upon each of the claims, from which it was possible to ascertain the boundaries, and that, by following the calls in the declaratory statements, there would be found between the east end line of the Gold Star and the Black Cloud a vacant space of about 75 feet, and that the Walstadde would overlap the west end of the Gold Star to a distance of more than 100 feet, thus including the discovery of the Gold Star. To meet this difficulty, the surveyor permitted the plaintiff to point out the positions of the corner posts as he recollected them, and made the survey accordingly, with the result that the Black Cloud was shifted to the west in its entirety a sufficient distance to constitute its west end line a common line between it and the Gold Star; and the Walstadde was shortened on the east so as to exclude the discovery of the Gold Star. This claim and the Black Cloud were thus made each the full length of 1,500 feet and the three together a contiguous group. While there was some conflict in the evidence as to the work done by plaintiff in 1901, the foregoing facts are not substantially controverted.

The court did not make formal findings. In the judgment-roll and the decree we find the following under the designation of "Court's Decision": "In this action, heretofore tried by the court, the court finds for the plaintiff for his Walstadde lode claim, for all portions of his Gold Star and Black Cloud lode claims not in conflict with defendant's claims, and for that portion of his Black Cloud lode claim in conflict with defend-

ant's claim lying east of a line drawn parallel with the west end line of his said Black Cloud claim at a point 500 feet west of the center of the discovery shaft of said Black Cloud claim. And in all else the court finds for defendant. And therefrom the court concludes that each party is entitled to a decree for recovery by each party of their respective claims, as in the above findings indicated." A decree was rendered and entered in conformity with this decision. The plaintiff has appealed from the decree and an order denying his motion for a new trial.

It is apparent from the decision that the court found in favor of the plaintiff upon all the issues, so far as concerns the Walstadde claim as well as the Black Cloud, except as to the portion in conflict between the latter and the Croatian west of the west end line of the Black Cloud, placed as indicated by the recitals in the Black Cloud declaratory statement, and that, as to the Gold Star, it found in favor of the defendant. This conclusion necessarily implied a finding against the defendant upon his plea of forfeiture. The question submitted to us is whether the evidence justifies the findings in so far as they affect the validity of the Gold Star location.

The theory upon which the court proceeded as to the Walstadde was that the boundary monuments had disappeared, and that the testimony of the plaintiff as to their original location was not altogether satisfactory, and hence that the descriptive calls of distances in the declaratory statement were so far controlling that this claim must be measured along the vein for the full length of 1,500 feet. As to the courses to be observed, the theory was that the terms "easterly," "westerly," and "north," and "south" were to be construed as denoting any course nearer to the east and west, etc., than to the other cardinal points of the compass, and that in fixing them the surveyor properly took into consideration the course of the vein as stated in the declaratory statements. Having adopted the theory as to the distances, and assuming that the Walstadde was located first in order, the result necessarily was that the Gold Star location was void because the discovery made for it was within the

boundaries of the Walstadde.   Proceeding upon the same theory, with reference to the Black Cloud, the conclusion was reached that, inasmuch as the surveyor had shifted it as an entirety toward the west so as to make it cover a distance of more than 500 feet along the vein west of the discovery shaft, the ground thus included should be excluded because it was not within the boundaries of the claim as originally located.   While this is not altogether clear from the decision itself, it is made so by a memorandum opinion filed in the case, which, though not a part of the record and not properly in the transcript, is referred to by counsel for both sides as explanatory of the decision.   Even so, how, after adopting the theory it did, the court awarded to the plaintiff any portion of the ground covered by the Gold Star, it is impossible to understand; for, if the location of this claim was invalid because the discovery supposed to have been made on it was entirely without its boundaries, the ground covered by it was vacant for all purposes, and could not properly be adjudged to belong to the plaintiff.

We think the theory adopted by the court as to the proper mode of determining the boundaries was, speaking generally, correct, and counsel do not seem to question it.   The statute in force in this state at the time the plaintiff's locations were made did not require the declaratory statement or notice of location recorded to contain a description of the claim by metes and bounds.   (Comp. Stats. 1887, Fifth Div., sec. 1477; *Upton* v. *Larkin,* 7 Mont. 449, 17 Pac. 728.)   Yet, where it does contain such a description, it is safer to accept the sworn statements of the claimant, made contemporaneously with the acts done by him, as to what he did, rather than his mere recollection of them many years afterward.   And this is not an unreasonable rule, because the presumption is that statements so made at or near the time of the location, and when there was no controversy over the right involved, are more likely to be true.   In *Upton* v. *Larkin, supra,* the locator, however, was held not conclusively bound by the monuments described in his statement. There the statement referred to pine trees as the monuments

marking two of the corners of the claim, whereas the evidence showed that these monuments were stakes. This holding proceeded upon the theory that, since the statute did not require any description by metes and bounds, it was a question for the jury, upon all the evidence, whether the statute had been complied with; but, where the monuments have disappeared entirely, we do not see why the rule adopted by the trial court is not based upon a just principle, and is entirely reasonable. And if the measurements are made from points clearly fixed by the evidence, for illustration, from the discovery shafts, as was done here, and as to the location of which there was no substantial controversy, and along the general course of the lead, so that no encroachment is made upon adjacent ground, there seems to be no substantial reason why the area so ascertained should not be awarded to the claimant as against a subsequent conflicting location; otherwise a locator must be held bound at his peril to keep in place his original monuments or supply others when they have been removed. Since it was apparent that the surveyor in measuring the end lines took the statements of the plaintiff designating the position of the corner posts, and, by making the survey accordingly, reduced the Walstadde and Gold Star end lines somewhat in length, the court properly concluded this deviation from the calls in the statements furnished the defendant no ground for complaint.

But in our opinion the court erred in determining the order in which the locations were made, and thus worked out an erroneous result in the application of the rule. There is no controversy in the evidence that the Black Cloud location was made first, the Gold Star second, and the Walstadde last. The west end line of the first was properly fixed at 500 feet along the vein west of the discovery shaft according to the first call in the statement. This was correct; otherwise, this claim would have included ground not covered by it as originally located. The same course should have been pursued with the Gold Star. The evidence showed that the west end line was run through the center of the discovery shaft, as recited in the statement.

This was sufficient to support a location. (*Upton* v. *Larkin, supra.*) This being the condition, the location was valid when completed, thus fixing the west end line of the claim. The fact that the Walstadde was thereafter so laid out in length as to overlap the west end line of the claim and include the discovery, operated only to avoid that claim to the extent of the conflict, and could not impair the Gold Star. The court disregarded the evidence in this connection. Hence the erroneous conclusion was reached that the Gold Star location was void, whereas, if any of the claims were to be held valid, this by the same rule should likewise have been held valid. From this point of view— and under the circumstances of this case we think it the proper one—the Croatian location should have been held void, because the discovery upon which it was made is within the boundaries of the Gold Star.

Upon the evidence, the finding that there was no forfeiture as to the Walstadde in 1901 was proper. The burden was upon the defendant to establish his allegation on this subject by clear and convincing evidence. (*Strasburger* v. *Beecher*, 20 Mont. 143, 49 Pac. 740; *Copper Mt. Min. Co.* v. *Butte & C. Co.*, 39 Mont. 487, 104 Pac. 540.) This, in our opinion, he failed to do. The evidence was directed to the inquiry whether any work was done upon the Walstadde through the shaft and drift during 1901, and whether, if done, it tended to develop the Gold Star and Black Cloud as a part of a consolidated claim or contiguous group. The court answered both inquiries in the affirmative. As to the Gold Star, the finding was clearly correct. Since the Black Cloud is not contiguous to the Gold Star, it might well be contended that this work did not represent it; but be this as it may, the Croatian location, being void because not based upon a valid discovery, it is immaterial for present purposes whether the Black Cloud had been represented or not. It could be held forfeited only upon the theory that the Croatian location was valid, which, as we have seen, was not the case.

The point is made by counsel for defendant that there is no reference in the declaratory statement of the Gold Star to a

natural object or permanent monument sufficient to identify it; and hence that the court should have held the location void in any event.   Disregarding the references to the Bob White claim on the north, and the Walstadde on the west, the reference to the racetrack is, under the evidence, sufficient to identify it.   At the time the location was made, what was then known as the racetrack inclosure was apparently a well-known and permanent structure about one and one-fourth miles to the west.   It has since been removed; but the evidence tends to show that the location occupied by it was then, and still is, well known.   The same reference is made in the Walstadde declaratory statement. The court evidently regarded it as sufficient; for the evidence tends to show that the Silver Cliff claim, mentioned in the description of the location, was not a valid subsisting claim when plaintiff made his locations.   So the Bob White claim, mentioned in the Gold Star declaratory statement, seems to have been an abandoned claim.   This reference may be omitted entirely, as may also the reference to the Walstadde, since it became a permanent monument only from the date of the record; and still it was a question for the court to determine from all the evidence whether the reference to the racetrack was sufficient.   The rule applicable is that if by any reasonable construction, in view of the surrounding circumstances, the language employed in the description will impart notice to subsequent locators that the particular portion of ground in question has been located, it is sufficient.   The cases illustrating the liberality of its application are numerous.   (*Flavin* v. *Mattingly,* 8 Mont. 242, 19 Pac. 384; *Upton* v. *Larkin,* 7 Mont. 449, 17 Pac. 728; *Garfield M. & M. Co.* v. *Hammer,* 6 Mont. 53, 8 Pac. 153; *Riste* v. *Morton,* 20 Mont. 139, 49 Pac. 656; *Gamer* v. *Glenn,* 8 Mont. 371, 20 Pac. 654; *Bramlett* v. *Flick,* 23 Mont. 95, 57 Pac. 869; *Farmington Gold Min. Co.* v. *Rhymney,* 20 Utah, 363, 77 Am. St. Rep. 913, 58 Pac. 832; *Morrison* v. *Regan,* 8 Idaho, 291, 67 Pac. 955; *Hammer* v. *Garfield M. & M. Co.,* 130 U. S. 291, 9 Sup. Ct. 548, 32 L. Ed. 964.)

The findings should have been for the plaintiff generally and a decree entered adjudging his rights accordingly. It is not necessary, however, to direct a new trial. The cause is remanded to the district court to modify the findings and decree to make them conform to the conclusions stated herein.

*Modified.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.