(June 1, 1896.)

## BROWN v. LEVAN.

[46 Pac. 661.]

MINING—LOCATING CLAIMS.—In locating mining claims it has become the settled law that section 2324 of the United States Revised Statutes must be complied with.

SAME—MONUMENTS.—That the record must contain such a description of the claim by reference to some natural object or permanent monument as will identify the claim.

SAME—WHAT NATURAL OBJECT OR MONUMENT MUST SHOW.—Such reference to a natural object or permanent monument must be such as to furnish a reasonable certainty that the locus of the claim has not been, and could not well be changed.

TYING CLAIMS—DISCOVERY AND CORNER STAKES.—Permanent monu-
ments may be erected for the purpose of tying the claim to them,
but then courses and distances from them to discovery stake or
corner stakes, or some other object on the ground, must be stated
with reasonable accuracy.

(Syllabus by the court.)

APPEAL from District Court, Boise County.

L. Vineyard and William H. Clagett, for Appellants.

The second point on which the court granted the nonsuit was
that the location notice and record of the Magpie claim failed
to sufficiently describe the *locus* of the claim with reference to
natural objects of permanent monuments as required by sec-
tion 2324 of the United States Revised Statutes and section
3102 of the Revised Statutes of Idaho. On this point the evi-
dence shows that John Brown, the locator, was unable to read
or write. That for this reason William Francis wrote the loca-
tion notice that was posted on the east center end stake, and
the inscriptions on the exterior boundary stakes and monu-
ments. Described the *locus* of the claim with reference to
natural objects or permanent monuments (among others) as
being about one-half mile southwest from the Hurt mines, and
that the adjoining claims were the Gem of the Woods on the
north, the Kid on the south and the Greyhound on the east.
It was developed on the trial that at that time Hurt was in-
terested in three claims in that district of country, viz.: 1. The
old Hurt mine, which was the oldest and best known natural
object or permanent monument in the district, and which lay
northeast of the Magpie claim and distant about one-half mile
therefrom, this corresponding by monument, course and dis-
tance with the locative call of the notice of location. This
was the claim which Francis had in view when by a mistake he
wrote the word "mines" instead of mine in the notice. 2. The
"Old Man" claim situated one thousand feet east of the Magpie,
and the Silver Leaf or Silver Spray claim situated southwest
of the Magpie. Neither of said last two claims were at that
time well-known natural objects or permanent monuments, and
neither of them corresponded with the courses or distances con-

tained in the notice. With this evidence before it the court be-
low held that the description was so indefinite that the location notice and the record thereof were void, took the case from
the jury whose special duty it was to pass upon the sufficiency
of the description and granted the nonsuit. In considering
ambiguous descriptions in mining location notices and records,
the same rule prevails as in the construction of deeds where
like ambiguities exist. (*Duryea v. Boucher,* 67 Cal. 141, 7
Pac. 42; *Piercy v. Crandall,* 34 Cal. 334.) Mining notices and
records should receive a liberal construction to the end of upholding a location made in good faith. (*Book v. Justice Min.
Co.,* 58 Fed. 117; *Brady v. Husby,* 21 Nev. 453, 33 Pac. 803;
*Carter v. Bacigalupi,* 83 Cal. 198, 23 Pac. 361; *Quimby v. Boyd,*
8 Colo. 201-203, 6 Pac. 462; *Gamer v. Glenn,* 8 Mont. 377,
20 Pac. 654; *Cheeseman v. Hart,* 42 Fed. 102.) In this case
the court assumed that because there were three mines in which
Hurt was interested there were therefore three monuments to
which the Magpie was tied, and that as the three monuments
all differed from each other in their several directions and distances from the Magpie, the Magpie was therefore tied to
nothing. Where the monuments in a call conflict, the rule of
construction is that the courses and distances are evidence of
the true description, and where it appears that a monument
has been erroneously inserted it will be rejected. (*Shipp v.
Miller,* 2 Wheat. 316-323; *Barclay v. Howell,* 6 Pet. 500, 511;
*Thatcher v. Howland,* 2 Met. 41; *Bosworth v. Sutsvort,* 2 Cush.
394, 399; *Hamilton v. Foster,* 45 Me. 32, 38; *Gibson v. Bogg,*
28 Mo. 478, 480; *Evans v. Green,* 21 Mo. 170, 206, et seq.; *Bars
v. Mitchell,* 22 Tex. 294; *Bagley v. Morrell,* 46 Vt. 99.)
Even the initial point in a description will be rejected where
it will reconcile the other calls, and effectuate the intent of
the parties. (*Piercy v. Crandall,* 34 Cal. 340, 341.) The
court below seems to have paid no attention to the stakes and
monuments on the Magpie ground and described in the notice
and record as fixed objects and permanent monuments serving
to identify the claim with reasonable certainty. And yet the
courts of high authority hold that such monuments or objects
may alone be sufficient for this purpose. (*North Noonday*

*Co. v. Orient Co.,* 6 Saw. 310, 1 Fed. 522; *Jupiter Min. Co. v. Bodie Min. Co.,* 7 Saw. 110, 11 Fed. 666; *Du Prat v. James,* 65 Cal. 558, 4 Pac. 562; *Myers v. Spooner,* 55 Cal. 261, 262; *Carter v. Bacigalupi,* 83 Cal. 191, 23 Pac. 361.)

W. E. Borah and John T. Morrison, for Respondent Levan.

Hawley & Puckett, for Emerson and Teater.

There was no evidence that a valid location was ever made of the alleged Magpie claim, because said location notice fails to designate either natural objects or permanent monuments, as required by the United States statutes and as required by section 3102 of the Revised Statutes of the state of Idaho. It was not alone a question of whether or not the objects named were natural monuments or permanent objects, but there was an entire failure to comply with the terms of the statutes in any manner. (U. S. Rev. Stats., sec. 2324; Idaho Rev. Stats., sec. 3102.) That portion of the mining location notice of the Magpie purporting to comply with these provisions of the statutes reads as follows: "The mining claim hereby located is situated in ———— mining district, Boise county, state of Idaho, and is more particularly described as follows, to wit: Being situated and located on the north side of North Willow creek about one-half mile from the Hurt mines, the direction being southwest. The adjoining claims are the Gem of the Woods on the north, the Kid claim on the south and the Greyhound on the east." (*Drummond v. Long,* 9 Colo. 538, 13 Pac. 543.) The court held that the notice was wholly insufficient, saying "the statute pronounces such a location certificate void. There was, therefore, no error in rejecting it." (*Gilpin Co. Min. Co. v. Drake,* 8 Colo. 589, 9 Pac, 787; *Faxon v. Barnard,* 2 McCrary, 44, 4 Fed. 702; *Darger v. Lesieur,* 8 Utah, 160, 30 Pac. 363; *Dillon v. Baylias,* 11 Mont. 171, 27 Pac. 726-728.)

In this case the plaintiffs allege that they were and are the owners of and in possession of the Magpie mining claim on the north side of Willow creek, in Boise county, Idaho, in what was then an unorganized district, now known as "West View mining district." The claim was located September 10, 1892,

by John Brown. William Francis wrote the notice of location
for plaintiff. The Magpie and two other claims, named the
"Kid" and "Greyhound," were recorded on the same day, but
it appears from the evidence that the two latter claims were
located after the Magpie. Brown, the plaintiff, testified that
he took the notice off of the discovery stake of the Magpie, and
took it to Boise City, to T. J. Curtis. The latter copied it,
and Brown took the copy thus written to the recorder, and had
it recorded in the recorder's office of Ada county. It was dis-
covered afterward that the ground located was in Boise county.
Then the same notice was taken to the recorder's office in Boise
county, and there recorded. The original notice was taken
back, and placed on the stake as before. It remained there
some time, and was finally washed off. Brown, the plaintiff
and locator, states that he worked nearly two months on the
claim in 1892; sixty or sixty-one days in 1893; that he went
to the claim in 1894, some time in August, and found the de-
fendant Levan there with his men. Brown and Levan had a
dispute over the claim at that time. The stakes that had been
erected as shown by the evidence of Brown and others were
then down and removed from the claim, and the discovery shaft,
as plaintiff describes it, "was filled up just about natural, and
the claim showed no work anywhere." Brown states further
that Francis wrote the notice for him; that he himself, not be-
ing able to write, does not know what was in the notice. A
copy of the notice was introduced in evidence, which was in
part as follows:

"The mining claim hereby located is situated in —— min-
ing district, Boise county, state of Idaho, and is more particu-
larly described as follows, to wit: Being situated and located
on the north side of North Willow Creek, about one-half mile
from the Hurt mines, the direction being southwest. The ad-
joining claims are the 'Gem of the Woods' claim on the north,
and the 'Kid' claim on the south, and the 'Greyhound' on the
east. This location is distinctly marked on the ground, so
that its boundaries can be readily traced by a stake set at dis-
covery shaft, where this notice and statement is posted, this
tenth day of September, 1892, and by substantial posts or monu-

ments of stone at each corner of the claim, and the exterior
boundaries of the claim as marked by said posts or monuments.
are as follows, to wit: Beginning at discovery stake, and run-
ning thence in a northerly direction three hundred feet, to a
stake; thence in a westerly direction one thousand five hundred
feet, to a monument; thence in a southerly direction six hun-
dred feet, to a stake; thence in an easterly direction one thou-
sand five hundred feet, to a stake; thence in a northerly di-
rection three hundred feet, to the place of beginning—includ-
ing all surface ground within said boundaries.   The under-
signed intend to hold this claim under and according to the
laws of the United States and of the state of Idaho, and to re-
cord this notice and statement under oath in the county re-
corder's office of said county, as provided by law.   Dated this.
10th day of September, 1892.

(Signed)    "JOHN BROWN,
"JOHN RANSOM,
"Locator and Claimant."

Evidence was also introduced as to the manner in which the
boundaries of the claim were marked on the ground, and also
testimony to show what was known as the "Hurt mines," and
where they were situated.   Much other testimony was intro-
duced, some of which will be referred to hereafter.   The plain-
tiff then rested, and the defendant moved a nonsuit, which was
allowed by the court.

MORGAN, C. J. (After Stating the Facts.)—The specifica-
tions of error are as follows: "1. The court erred in granting
the motion for and entering judgment of nonsuit; 2. The
court erred in refusing to admit the evidence of Hastings as to
the value of the ore extracted from the Magpie claim by de-
fendants, based upon samples taken by witnesses from the vein
surrounding the ore that had been extracted."   The ground
upon which the motion for nonsuit was made and sustained is:
"Because said location notice fails to designate either natural
objects or permanent monuments, as required by the Revised
Statutes of the United States (section 2324), so that the loca-
tion of the claim could be accurately determined; and because

said notice does not contain a description of the locality of the claim by reference to natural landmarks or fixed objects and contiguous claims, so as to render the situation or locality of the claim reasonably certain, as required by section 3102 of the Revised Statutes of Idaho." Section 2324 of the Revised Statutes of the United States requires that all records of mining claims shall contain such a description of the claim or claims, located by reference to some natural object or permanent monuments, as will identify the claim. In the case of *Drummond v. Long,* 9 Colo. 538, 13 Pac. 543, the location notice, after describing the boundaries of the claim, states further: "The discovery shaft being situate upon said lode within the lines of said claim in Uncompaghre mining district, county of La Plata, territory of Colorado, on the southwest side of Mt. Hardon, in Portland gulch, about fifteen hundred feet north of the Hawkeye lode." With reference to this location notice the court says: "In the certificate before us we do not find any such reference to either a natural object or a permanent monument as meets the substantial requirements of the statute. Describing the lode as being on the southwest side of Mt. Hardon and in Portland gulch locates the lode generally. It is not, however, that definite location by reference which the statute contemplates"—citing *Faxon v. Barnard,* 4 Fed. 702. "The certificate also describes the discovery shaft of the Portland as being about fifteen hundred feet north of the Hawkeye lode. The evidence discloses nothing respecting the character of the Hawkeye lode. We assume, however, that it has been duly located in compliance with the laws of Congress and of the state; that it is in the usual form of a parallelogram, fifteen hundred feet in length by three hundred feet in width; and that it contains about ten acres. A tract of land of such dimensions cannot be treated either as a natural object or permanent monument within the meaning of the act of Congress. The discovery shaft of the Portland is not tied definitely to any corner or monument of either the location or lode. From what point on the Hawkeye location or lode is one to start to find and identify the discovery shaft of the Portland? With the starting point anywhere in a parallelogram of ten acres, the

discovery shaft is anywhere about fifteen hundred feet distant in ten acres to the north. . . . . Under such conditions, identification with that reasonable certainty required by the statute is an impossibility, and it cannot be said that the statute in this respect has been complied with. To hold otherwise would leave the requirement of but little practical utility. The insufficiency of the location certificate is apparent upon its face, and we do not see that it can be aided by evidence *aliunde.* The effect of the omission is to leave the certificate of location void"—citing *Gilpin Co. Min. Co. v. Drake,* 8 Colo. 586, 9 Pac. 787. In *Gleeson v. Mining Co.,* 13 Nev. 462, the court says: "The object of the law in requiring the location to be marked on the ground is to fix the claim, to prevent floating or swinging, so that those who in good faith are looking for unoccupied claims in the vicinity of previous locations may be enabled to ascertain exactly what has been appropriated in order to make their locations upon the residue. We concede that the provisions of the law designed for the attainment of this object are most important and beneficent, and they ought not to be frittered away by construction." In *Faxon v. Barnard,* 2 McCrary, 46, 4 Fed. 704, the court says: "The description of the location of the mining claim is as follows: 'Situate on the north side of Iowa gulch, about timber line, on the west side of Bald Mountain. Said claim is staked and marked as the law directs.' " Of this the court says: "It is utterly impossible to find in this language any reference to a natural object or permanent monument defining the location, and the only question is as to the effect of the omission. The act of Congress requires such reference to be made in the description of a claim (Rev. Stats., sec. 2324), and the state legislature has declared that a certificate shall give such description as shall identify the claim with reasonable certainty." In *Mining Co. v. Drake,* 8 Colo. 589, 9 Pac. 789, the description was as follows: "Beginning at the westerly end of the Gilpin County Mining Company's property on the Williams lode in Lake Gulch mining district, running thence in a westerly direction a distance of fifty feet to the easterly end of Packard and Updegraft's property on said lode." Of this .description the court says: "It is conceded that the

claims referred to are patented claims, and they may supply
the permanent monuments required by the act of Congress.
Still the references thereto in the location certificate, and the
descriptions of the claim located, are too indefinite to enable
the same to be fully identified, or its boundaries readily traced
from this certificate alone. 'Beginning at the westerly end of
a certain mining claim. At what point of this westerly end?'
Was it at the corner, or in the center, or some other point on
the line of this westerly end? The certificate does not tell.
'Running thence in a westerly direction a distance of fifty feet
to the easterly end of Packard and Updegraft's property on
said lode.' What part of the easterly end of this property did
this line intersect? Where was the discovery shaft situated
with reference to this line? To what fixed point is said shaft
or any other part of said claim tied? It is apparent that no
information is furnished by this certificate which will enable
anyone to trace the boundaries of this claim. The discovery
shaft is tied to nothing definitely, nor is any corner or point
of the claim, so far as appears from this record. The statute
pronounces such a location certificate void. There was there-
fore no error in rejecting it." In *Darger v. Le Sieur*, 8 Utah,
160, 30 Pac. 364, the location notice was as follows: "This is
to certify that we, the undersigned, have this date located and
claim fifteen hundred feet in length on this ledge of shale and
wax, and three hundred feet on each side of the center of loca-
tion. We claim three hundred feet running east, and twelve
hundred feet running west from the monument. This ledge is
situated up near the head of the right-hand fork of what is
known as 'Tie canyon,' about five miles from the Denver and
Rio Grande Railroad, in Utah county," etc. With reference
to this notice, the court says: "We think the court erred in ad-
mitting in evidence plaintiff's location notices. They are fa-
tally defective, and valid locations cannot be made under them.
The Revised Statutes of the United States require that there
must be such a description of the claim located, by reference to
some natural object or permanent monument, as will identify
it. Assuming that the Denver and Rio Grande Railroad had a
track in Utah county, an officer armed with a writ of restitution

under the verdict and judgment could not, from the description given, put plaintiffs in possession of their claims. They are described as being about five miles from the railroad track, but in what direction, or from what point on the railroad, is not stated." In *Drummond v. Long,* 9 Colo. 540, 13 Pac. 545, the court says, with reference to what may be designated as a permanent monument: "The intention of the provision is to give one seeking the locus of a recorded claim something in the nature of an initial point from which to start, and, following the course or distance given, find with reasonable certainty the claim located. The identification must be by reference to some natural object or permanent monument. Stone monuments, blazed trees, the confluence of streams, the point of intersection of some well-known gulches, ravines, or roads, permanent buttes, bills, mining shafts, etc., are enumerated as satisfying the requirements of the law. In the certificate before us we do not find any such reference to either a natural object or a permanent monument as meets the substantial requirements of the statute." In *Dillon v. Bayliss,* 11 Mont. 171, 27 Pac. 726, the court says: "We are prepared to concede that, no matter how permanent and prominent the monument may be, or how conspicuous and certain the natural object is, yet, if there was no intelligent reference to them that would identify the claim, the description would not satisfy the requirements of the United States law. The very object of selecting a natural object or erecting or referring to a permanent monument is, in the language of the statute, to identify the claim."

Judge Hallock, in *Faxon v. Barnard, supra,* says: "The government gives its lands to those citizens who may discover precious metal ores therein, upon the condition that they will define the subject of the grant with such certainty as may be necessary to prevent mistakes on the part of the government and on the part of other citizens who may be asking the same bounty. This is reasonable and necessary to justly administer the law, and therefore it must be said that without such description, a certificate of location is void:" (See, also, *Darger v. La Sieur, supra.*) To the same effect we might cite many other cases, if it were necessary.

From these authorities it is evident that it has become the settled law of the land that section 2324 of the Revised Statutes of the United States must be complied with, to wit: "That all records of mining claims shall contain such a description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim." The location notice of the Magpie describes the mine as located on the north side of North Willow creek. This portion of the reference is, of course, so indefinite and uncertain that it amounts to no reference at all, when taken alone. It is as indefinite as the reference of the Mary Belle lode in *Darger v. Le Sieur, supra,* which described the claim as situated about five miles from the Denver and Rio Grande Railroad track, near the head of the right-hand fork of what is known as "Tie canyon." Concerning this notice of location and five others of the same tenor, the court in the above case says that they are fatally defective, and valid locations cannot be made under them. Putting the whole reference together, which, of course, is proper, and is it any better? Namely, "situated on the north side of North Willow creek, about one-half mile from the Hurt mines, the direction being southwest; the Gem of the Woods claim on the north and the Kid claim on the south and the Greyhound on the east." Concerning the Hurt mines, Bradford Hurt, the son of the first locator, testifies: "We [that is, Bradford Hurt and his father] were interested in four claims there. They were the Birthday, the Old Man, Gray Eagle, and the Silver Leaf. The mines which are known as the 'Hurt mines' are the Birthday, Old Man, Gray Eagle, and Silver Leaf. The Silver Leaf is southeast of the Magpie—joins, or nearly joins, it. The Old Man is east of the Magpie. The Gray Eagle is east of the Old Man, and the Birthday is northeast of the Old Man. These claims do not all join. They do not connect exactly. The Silver Leaf does not join in the rest. The other three joined at the time. The Old Man is not one thousand feet from the Magpie. It possibly may be one thousand feet. It is six or eight hundred." William Francis testifies: "I know about the Hurt mines—the Birthday, the Old Man mine, and the Silver Spray. There are a number of mines over there

known as the 'Hurt mines.' The Silver Spray is southwest of the Magpie. The Old Man is one thousand feet east of the Magpie." John Brown, the plaintiff, testifies: "Hurt has three mines on North Willow creek, I believe—the Silver Leaf, the Old Man, and the Birthday. Some call them the 'Hurt mines.' Some call the Birthday the 'Hurt mine,' and some call the Old Man mine the 'Hurt mine.' Mr. Hurt has three mines over there, I believe. Hurt has an interest in the Silver Leaf, and some call it the 'Hurt mine' because he is in it." No attempt was made to show that there was any mistake made in writing the location notice, and we must take it as we find it, and must presume that the intention was, as stated in the notice, to refer to the Hurt mines as a permanent monument by which to identify and from which to determine the location of the Magpie. Now, if we make a diagram of the Hurt mines, and place them in any position that will correspond with the testimony, then draw a line from the northwest to the southeast about one-half mile to the southwest of the Hurt mines, we shall see at once that half a dozen mines may be located, and each one in a southwesterly direction from the Hurt mines, and all north of North Willow creek. It is not at all surprising that Mr. Hastings, the surveyor, at first said he could not find the mine from the location notice, and then, partially taking it back, says that he did not try to. There was no discovery shaft or cut on the ground when Mr. Hastings went there to survey the claim; nothing to indicate that any work had ever been done there. The discovery stake might have been moved many times and no one unacquainted with the location could have discovered from the location notice that it had been so moved. We think it is the duty of the court to give mining notices and records a liberal construction, to the end of upholding a location made in good faith. But where the description and reference to a natural object or permanent monument is of such a character that a mining engineer could not find the claim from the location notice, as is evident in this case, and where it is such that the claim may be floated almost anywhere to suit the ground or to cover ore that may have been since discovered, it is clearly such a notice as cannot furnish a foundation for a valid location.

It appears from Mr. Hastings' testimony that he placed the discovery at the point indicated in his testimony, not from any directions in the location notice, nor on account of any indications on the ground that any work had been done there, but from statements made by plaintiff; and hence all his measurements, being made from an uncertain point, were themselves uncertain, and the court is unable to say whether this was the original location or not. We may presume that plaintiff Brown was perfectly honest in pointing out the place of discovery, and the corners of the claim, as the evidence shows he did so point out the corners, to the surveyor; but where there is such uncertainty in the location notice we have no certainty of it at all. It is evident that the reference to some natural object or permanent monument to identify the claim must be such as to furnish a reasonable certainty that the locus of the claim has not been and could not well be changed. The naming of contiguous claims is a requirement of our statute, and was complied with; but the reference to a permanent monument must be such as will enable a skilled engineer, at least, to identify the claim without reference to contiguous claims the location of which is uncertain. Permanent monuments may exist before the location, or may be erected for the purpose of tying the claim to them; but then courses and distances from them to discovery stake or corner stakes or some other object on the ground must be stated with reasonable accuracy. The judgment of the court below is affirmed.

Sullivan and Huston, JJ., concur.

### ON PETITION FOR REHEARING.

Per CURIAM.—We have carefully examined and re-examined the petition for rehearing in this case, and the authorities therein cited, and we are unable to find anything therein which would warrant us in granting the prayer of the petition.

The petition is a very specious argument against the conclusion of the court, but it differs very little from the argument on the hearing.

The petition for rehearing is denied.