DILLON, RESPONDENT, *v.* BAYLISS, APPELLANT.

[Argued July 14, 1891. Decided October 6, 1891.]

MINES AND MINING.—*Location notice—Permanent monument.*—A location notice which describes the claim by reference to an adjoining claim is admissible in evidence as containing a sufficient reference to a permanent monument under section 2324 of the Revised Statutes of the United States, and the question as to whether such adjoining claim is in fact a permanent monument is a matter of proof. (*Metcalf* v. *Prescott,* 10 Mont. 283, cited.)

SAME—*Same—Sufficiency of description.*—Where a location notice refers to an adjoining claim as being on the southeast, and contains a description of its exterior boundaries as beginning at the southwest boundary of such adjoining

claim, an objection to its admission in evidence upon the ground that the description is indefinite and uncertain cannot be sustained where it does not appear from the face of the notice that the surface lines or superficial shape of the adjoining claim was such as to render the description impossible, and *prima facie* the notice is admissible.

SAME — *Same* — *Conclusiveness.* — Though the description in a location notice may be sufficient to admit the notice in evidence, it is not thereby rendered conclusive, but it may be shown by evidence *aliunde* the notice that the description therein, when applied to the premises with reference to the permanent monuments, is misleading, unintelligible, or impossible, or that the alleged monuments are not in fact such.

*Appeal from First Judicial District, Lewis and Clarke County.*

Action to determine the right to the possession of mining premises. The cause was tried before BLAKE, C. J. The plaintiff had judgment below.

Statement of the case by the judge delivering the opinion.

This action is a contest between claimants of mineral lands upon the public domain of the United States.

Defendant applied to the government for a patent to the Maskelyne quartz lode mining claim. Plaintiff filed his adverse claim in the appropriate land office, alleging that he owned the premises by virtue of his location of the Kilby Claim.

Plaintiff then commenced this action in the proper court, for the purpose of determining the right of possession of the premises between the claimants. The contention is therefore between the two claims, the Kilby and the Maskelyne.

The Kilby location was made on January 2, 1882; that of the Maskelyne was April 5, 1883.

As the Kilby locator had all of the years 1882 and 1883 in which to perform his first annual representation work, forfeiture was not a question in the case. If the Kilby location was valid, and abandonment had not taken place, the Maskelyne location was a nullity. On these lines the case was tried.

Defendant's attack was upon the Kilby location, and was made upon the following grounds: The description of the Kilby, as contained in the location notice, was as follows: " Extending along said vein or lode one hundred feet in an easterly direction, and one hundred feet in a westerly direction, from the center of the discovery shaft, and three hundred feet on each side from the

middle or center of said lode or vein at the surface, comprising in all two hundred feet in length along said vein or lode, and six hundred feet in width. . . . . The mining claim hereby located is situated in Ottawa [unorganized] mining district, Lewis and Clarke County, Montana Territory, and is a fraction of a claim formerly owned by A. D. Porter and Michael Gleason, but by them forfeited by failure to represent. The adjoining claims are the Marble Heart Claim on the southeast, the Nine Hour Lode Claim on the southwest, and the St. Louis Claim on the north. This location is distinctly marked on the ground, so that its boundaries can be readily traced by post and a notice set at the discovery shaft, where this notice and statement is posted this second day of January, A. D. 1882, and by substantial posts or monuments of stone at each corner of the claim. And the exterior boundaries of the claim, as marked by said posts or monuments, are as follows, to wit: Beginning at the southwest boundary of Marble Heart, running two hundred feet, more or less, to the Nine Hour Lode on the southwest side, being two hundred feet, more or less, bounded on the northwest by the St. Louis Lode, to the place of beginning."

Defendant objected to the introduction of this notice of location, on the ground that it is indefinite and uncertain, and contained no sufficient description of the so-called "Kilby Lode," so that the same could be identified. The objection was overruled and the notice admitted. This appellant assigns as error.

Another alleged error relied upon is the refusal of the court to allow certain civil engineers to testify whether a skilled engineer could take the description in the notice, and, with knowledge of the surrounding geography, find the claim on the ground. To make this point clear it is necessary to state some of the evidence introduced prior to this offer by defendant.

It is observed that the location notice places the Marble Heart Claim on the southeast, the Nine Hour Claim on the southwest, and the St. Louis on the north. Michael Gleason, a witness for plaintiff, testified that the Marble Heart was on the north, the Nine Hour on the south, and the St. Louis on the west. A witness (Senate) for defendant testified to the same effect.

A. E. Cummings, on the part of defendant, who qualified himself as a skilled engineer, and as well acquainted with the ground, said that the Nine Hour was southerly, the St. Louis on the west, and the Marble Heart on the northeast; that he had taken the plat of the Kilby, as filed in the United States land office, upon the adverse claim, and gone upon the ground. He was, while on the witness stand, shown the location notice of the Kilby, and asked whether a skilled civil engineer could take the description in the location notice, and from it find the Kilby Claim.

James S. Keerl also qualified himself as a civil engineer, and was asked practically the same question.

George H. Robinson, also a civil engineer, went into details as to the premises, and his knowledge of them, and the surrounding ground and monuments. He was then asked the same question as that propounded to Cummings and Keerl.

Pursuing this line, the defendant offered to prove by these witnesses that it would be impossible to take the description in the notice of location of the Kilby, and from it locate the Kilby claim on the ground. This evidence was objected to by plaintiff, on the ground that whether the description was sufficient was a question for the determination of the court, which was concluded by the admission in evidence of the notice of the location of the Kilby. The objection was sustained by the court. This position taken by the court is also assigned as error.

*Cullen, Sanders & Shelton,* for Appellant.

The notice of location of the so-called Kilby Lode is fatally defective in not identifying the claim. The certificate recites that "the adjoining claims are the Marble Heart Claim on the southeast, the Nine Hour Lode Claim on the southwest, and the St. Louis Lode on the north. . . . . And the exterior boundaries of the claim, as marked by said posts or monuments, are as follows, to wit: Beginning at the southwest boundary of Marble Heart, running two hundred feet, more or less, to the Nine Hour Lode on the southwest side, being two hundred feet, more or less, bounded on the northwest by the St. Louis Lode, to the place of beginning."

There is no attempt to define the point on the boundaries of these respective mining claims where the posts or monuments are set, or what marks or indications there are on the posts or monuments that they mark the boundary lines of the Kilby Lode. As near as we can determine from the notice, the strike of the vein is from northeast to southwest, consequently a corner should be found at each of the four cardinal points of the compass. What is it that marks any particular corner of this claim? Is it a post or is it a monument? The notice must be so definite that a prospector or other person looking for mineral deposits could with the aid of the notice find the monuments, and from it and the description in the notice trace out the extent of the claim. (*Seidler* v. *La Fave*, 4 N. M. 369.) If this is the rule then it is manifest that this notice of location is void for uncertainty. Mining claims ordinarily are parallelograms fifteen hundred feet in length by six hundred feet in width. The notice of location does not indicate whether it is in the longer or shorter boundary line of either of these claims in which the post or monument of stone which marks the corner of the Kilby Claim will be found, or whereabouts in such boundary line — how far or in what direction from any given corner of one of these named claims one should look for it, or what, whether post or monument of stone, he may expect to find at any given corner. Again, three of these posts or monuments marking the corners of the Kilby Lode are located somewhere within or on the boundaries of the three adjoining claims, but the fourth corner of the Kilby cannot be so located unless one of the lines of one of these claims constitutes the boundary line on two sides of the Kilby. This is not to be supposed, and therefore there is one corner of the Kilby left wholly indefinite as to location. But the point in which this notice of location is most conspicuously indefinite and uncertain is in its location of the adjoining claims. "The adjoining claims (to the Kilby) are the Marble Heart Claim on the *southeast*," and yet when the corners of the Kilby are to be located, the locator commences at some point on the southwest boundary of the Marble Heart. It is needless to point out to this court that if the Marble Heart Claim adjoins the Kilby on the southeast side then the line separating the two claims must be the northwest line of the

Marble Heart and the southeast line of the Kilby. The other calls for corners are equally misleading and indefinite. Granting the proposition contended for by counsel on the other side, that an adjoining mining claim may constitute the "natural object or permanent monument" required by the statute, it must be conceded that the references in this notice are so conflicting, contradictory, and misleading as to render the notice absolutely void. For these reasons the Kilby Claim was not identified with reasonable certainty under section 2324 of the Revised Statutes of the United States, and the authorities construing the provisions therein contained. (*Hammer* v. *Garfield Min. Co.* 130 U. S. 299; *Hanswirth* v. *Butcher*, 4 Mont. 307; *Drummond* v. *Long*, 9 Colo. 539; *Faxon* v. *Barnard*, 2 McCrary, 44; 9 Morr. Min. Rep. 518; *Seidler* v. *La Fave*, 4 N. M. 369; *Pollard* v. *Shively*, 5 Colo. 312; 2 Devlin on Deeds, § 1010, and cases cited.)

Having admitted the location notice of the Kilby in evidence, the court erred in excluding testimony tending to show that the description of the premises therein contained was indefinite, misleading, and uncertain to such an extent that even civil engineers could not locate the ground with any certainty, or at all. This testimony was excluded, upon the theory that the admission in evidence of the location notice was conclusive as to the sufficiency of the description. It may have been a question of law for the determination of the court on the admission of the notice in evidence whether the mining claims therein referred to were "natural objects or permanent monuments" within the meaning of the statute, but as to whether there was such a reference to them in the notice of location as to identify the particular portion of the earth's surface claimed by the plaintiff as the Kilby Lode was a question of fact for the jury. "Definition and meaning of words," says Chief Justice McConnell, in *O'Donnell* v. *Glenn*, 8 Mont. 248–254, "used in a statute, are matter of law, and as to whether the objects described come within the definition is a matter of fact for the jury."

In *Upton* v. *Larkin*, 7 Mont. 449–454, this identical question was before the court. Objection was made to the introduction of the notice of location in evidence, for the reason that it did not identify the claim alleged to have been located. The court

found that the notice objected to did on its face refer to a permanent monument, to wit, the Gambetta Lode Claim on the east, and says: "Whether or not this was such a description as would identify the claim is a question for the jury." And Judge Liddell, in *Flavin* v. *Mattingly*, 8 Mont. 242–247, says: "As a matter of practice in this Territory the question is no longer an open one; and, after again considering the point, we see no reason for disturbing the jurisprudence thereon." The same question had been before the court in *Russell* v. *Chumasero*, 4 Mont. 309, and in *Garfield Min. Co.* v. *Hammer*, 6 Mont. 58. This question seems to be about as well settled elsewhere as it is in Montana. (Wade's Mining Law, § 28, and cases there cited; *Reed* v. *Spicer*, 27 Cal. 57; *Began* v. *O'Reilly*, 32 Cal. 11; *Anderson* v. *Black*, 70 Cal. 226; *Seidler* v. *La Fave*, 4 N. M. 369; *Pollard* v. *Shively*, 5 Cal. 312; *North Noonday Min Co.* v. *Orient Min. Co.* 1 Fed. Rep. 522–534; *Seidler* v. *Maxfield*, 4 N. M. 374.)

*Toole & Wallace*, for Respondent.

The notice of location was *prima facie* sufficient; hence the objection that "it was indefinite, uncertain, and contained no sufficient description of the lode so that the same could be identified," was not well taken. (*Garfield Min. Co.* v. *Hammer*, 6 Mont. 53; 130 U. S. 291, 299; *Upton* v. *Larkin*, 7 Mont. 454; *Russell* v. *Chumasero*, 4 Mont. 309.) The questions excluded are not whether the objects referred to in the notice of location were natural objects or permanent monuments, or whether relying upon these, or any of these, a party would be brought into the neighborhood of the claim as located upon the earth's surface, within the decision of the Supreme Court of Montana, and no contest appears to have been raised upon this point. The notice contained an attempted detailed description of the ground, which description was altogether unnecessary and surplusage therein. (*Upton* v. *Larkin*, 7 Mont. 449, 455.) The questions objected to involve the question whether, from this surplusage description, it would be possible to locate the Kilby Lode by metes and bounds on the earth's surface, and those questions were properly ruled out by the court, as a notice not

containing such a description as would enable this to be done, would not necessarily be imperfect. Indeed, such a description as would enable this to be done would be altogether unnecessary in the notice.

Appellant inquires with reference to the statement in the notice that the points of the claim were marked· by posts or monuments of stone, "is it a post or is it a monument?" Our Supreme Court has determined that if the ground is properly marked upon the earth's surface, whether by stone, stakes, or trees, a wrong reference in the notice to the nature of the marking will not in any way affect the location. (*Upton* v. *Larkin*, 7 Mont. 449.) The settled doctrine is not that the claim must be so described in the notice as that it can be marked off in metes and bounds upon the earth's surface, but that if in truth and in fact it be so marked upon the earth's surface, as that its boundaries may be readily traced, then this actual marking suffices; and if there be in the notice such a reference to a claim, a permanent monument, or natural object, as will lead the prospector into the neighborhood and vicinity of the claim, as thus actually marked and located, this suffices; and under the foregoing view there was clearly no error committed in the rejection of this question, nor in the admission of the notice of location.

DE WITT, J.—We will discuss the two points suggested in the above statement of the case. Was the location notice properly admitted in evidence? Did the court properly exclude evidence tending to show that the description in the notice was not sufficient to identify the claim?

1. The Revised Statutes of the United States (§ 2324), under which locations of mining claims may be made upon the public domain, provide: "All records of mining claims . . . . shall contain . . . . such a description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim."

The description in the location notice of the Kilby Claim is by reference to three alleged adjoining claims, the Marble Heart, the Nine Hour, and the St. Louis. A description by reference to an adjoining mining claim is a sufficient reference to a permanent monument to allow the notice of location to be intro-

duced in evidence, and it then becomes a matter of proof as to whether the adjoining claim is a permanent monument. In *Metcalf* v. *Prescott*, 10 Mont. 283, is the last affirmance which this court has made of a line of decisions to that effect. Therefore, the reference to a permanent monument was sufficient in the Kilby location notice to allow it to be introduced in evidence.

Appellant's counsel, as appears by the records of this court, is not without a share in the labor of establishing this doctrine upon the firm foundation on which it now rests in this court, and in the argument at the bar in this case he cordially assents to its continued stability. But his objection to the location notice goes beyond the principle just cited. Admitting that the three mentioned adjoining claims are permanent monuments, yet he says that the *reference* to them does not *identify the claim.*

We are prepared to concede that, no matter how permanent and prominent the monument may be, or how conspicuous and certain the natural object is, yet, if there was no intelligent reference to them that would identify the claim, the description would not satisfy the requirements of the United States law. The very object of selecting a natural object, or erecting or referring to a permanent monument, is, in the language of the statute, to *identify the claim.* As remarked by Judge Hallett in *Faxon* v. *Barnard*, in the Circuit Court of the United States for the district of Colorado, 9 Morr. Min. Rep. 515: "The government gives its lands to those citizens who may discover precious metal ores therein, upon the condition that they will define the subject of the grant with such certainty as may be necessary to prevent mistakes on the part of the government, and on the part of other citizens who may be asking the same bounty. This is reasonable and necessary to justly administer the law, and therefore it must be said that without such description a certificate of location is void."

Now, what are the facts as to the location notice in question? We examine it now upon its face alone, to ascertain whether it should, *prima facie,* be admitted in evidence, wholly disregarding, for the present, all uncertainties and ambiguities that may be developed by evidence *aliunde* the notice.

We find that the claim is two hundred feet long, running easterly and westerly, and six hundred feet wide. It is in a

certain mining district, county, and Territory. A post and notice are set at discovery shaft. There is a substantial post and monument at each corner. The Marble Heart claim is on the southeast, the Nine Hour on the southwest, and the St. Louis on the north. The description begins at the southwest boundary of the Marble Heart, and runs two hundred feet to the Nine Hour, on the southwest side.

Appellant argues that, if the Marble Heart is on the southeast of the Kilby, that a corner of the Kilby cannot be on the southwest boundary of the Marble Heart. From the location notice, the court did not know the directions of the surface lines of the Marble Heart, or the superficial shape of the same, or of the other adjoining claims. Mining claims are not always right-angled parallelograms. They are frequently, especially in a district well covered by locations, and in which are many fractions of full claims, very irregular figures, preserving a general parallelism of the end lines.

It does not appear from the face of the Kilby location notice that the Marble Heart was of such a shape that there was not a boundary which could be intelligently called a southwest boundary, although the body of the Marble Heart might be properly described as lying southeast of the Kilby. A court could not say from an inspection of the notice that such description was an impossible or uncertain one.

And so with the balance of the description by reference to the adjoining claims. The face of the notice does not set forth the corners or figures of the Nine Hour or St. Louis claims. It does not appear from the notice, but the surface lines of these claims were such that the Kilby's reference to them would have been certain, when one went upon the ground, and observed their lines, and the Kilby's conformation to them. The Supreme Court of Colorado in *Drummond* v. *Long*, 9 Colo. 539, says: "That degree of certainty with which the final survey for a patent fixes the *locus* and boundaries of the subject-matter of the grant is not required in the original location to be made by the discoverer of the lode, nor would it be practicable, without the aid of a professional surveyor."

We are of opinion that there was no error in admitting the location notice in evidence. Its fate, however, when it got into

court, and met the attacks of its adversary, is another matter, and brings us to the consideration of the second error assigned by the appellant.

2. It was shown in the evidence and by one of plaintiff's witnesses, among others, that the three adjoining claims named were situated in directions from the Kilby other than those set forth in the location notice. Witnesses who were skilled engineers were offered to prove that an engineer could not take the description in the location notice, and, by referring to the permanent monuments therein mentioned, find the premises claimed as the Kilby Lode. We do not attach importance to the fact that these witnesses were professional engineers. We mention them as such, for it was in that character that they appeared upon the trial. If, instead of being engineers, they had been any other class of persons, "who, having organs of sense, can perceive, and, perceiving, can make known their perceptions to others," the principle involved in the exclusion of their evidence would have been the same. Their offered testimony was not excluded because it was an attempt to set up the technical and exact rules and methods of applied mathematics as against the common perceptions of laymen. We can understand how an engineer might say professionally that a description was insufficient for him to find the ground, if he spoke by the principles of the exact science in which he dealt, while, as an ordinary observer, he might be compelled to admit that the description would guide him to the ground, and that, disregarding scientific errors and inaccuracies, he might find the ground intended to be described.

But, as remarked, the engineers' testimony was not excluded because it was offered as conclusive in establishing that the description was fatally defective. It was not objected to that it was applying too strict scientific measurements to locations which of necessity are made by men unacquainted with professional surveying. The law recognizes that locations of mining claims are generally not made with mathematical exactness, and much liberality is properly extended to the locator who does the best that the circumstances allow.

A surveyor could technically and truthfully say that a certain description would not identify the ground. With scientific

exactness, it might not; but a practical miner, familiar with the methods of locating claims, and with knowledge of the neighborhood, might as truthfully testify that he could take the description and find the ground.

The question in the case at bar is not between exact science and common knowledge. The engineers' testimony was excluded on a different ground—a ground that would have applied as well to the witness of common knowledge as to the civil engineer. If the engineers' testimony was to be excluded on the ground assigned, then all testimony of all witnesses to the same effect is incompetent.

The ground was as follows: Respondent took the position that the sufficiency of the description in the location notice was a matter for the court, and this was concluded by the fact that the location notice had been admitted in evidence, and that it could not then be attacked by testimony. On this objection the court excluded the testimony offered. To be sure, it was for the court to determine whether the location notice was sufficient, on its face, to admit it in evidence; and this, as we have shown above, the court properly decided. But did the notice then become infallible? Could it not be shown by engineers, or any competent witnesses who knew the facts, that the description of the notice, when applied to the premises and the alleged monuments, failed to identify the claim? And this is the precise class of testimony that the court had been allowing throughout the trial. The responsibility of its exclusion at this point, we are constrained to remark, is upon the counsel and not upon the court. The objection, as appears, was, quoting the language of the record, "for the reasons above given." This was in the course of an examination, in which certain pertinent objections had been made, and the reasons given, and the objections sustained. Then comes the objection in question, "for the reasons above given." Among those "reasons above given" was the one that the description in the location notice was conclusive. This was not called to the special attention of the court, but, in the collection of "reasons above given," the court must have had in mind other reasons and grounds which were deemed to be good. This is the only explanation of the sudden and single departure of the court from the course which it had theretofore followed.

Take the respondent's position in its extreme results, and it would appear that, if the description upon the face of a notice is good, then it is still good, even if it be made to appear by the clearest evidence that it describes nothing. Take an apparently good description, go upon the ground with it, find the monuments mentioned, then start to run the lines of the claim by reference to the monuments, and find that the monuments so exist, and the lines are so located by reference to them that the description is wholly unintelligible, and, with the description, one cannot find the premises intended to be described. Then we must accept that location description as final, and cannot show by any testimony that it is utterly worthless for the purposes of identifying the claim. We do not understand that to be the law.

The reference to natural objects or permanent monuments is for the purpose of identifying the claim. It is, among other purposes, to show the prospector that the ground that he may desire to appropriate has been taken by another. Now, if such prospector reads his predecessor's notice, finds his monuments, and, tracing the description, finds nothing described, is that notice to him? Or is it a description which enables the government to grant to such locator anything certain? We think not.

We do not know what the testimony of these witnesses would have been. We do not speak of its weight. It might have been, in the minds of the jury, wholly overthrown. But the nature of it was competent.

It is a matter of proof whether or not an object described in the location notice as a permanent monument is in fact such. Then it is certainly a matter of legitimate proof whether, in fact, there is any *reference* to the permanent monument which is intelligible, or whether the reference is delusive, meaning nothing, describing nothing, and misleading.

Let it be well understood that we pass upon the objection as it was made and sustained. If the question was objectionable upon grounds other than those assigned, and called to the attention of the court, that was not before the District Court nor this court. The court on the trial had received evidence of the errors of the description, that the adjoining claims were not situated as described in the notice, and evidence tending to show

that the claim could not be found from the description. Then the question is asked, could a civil engineer take the description and find the ground? In view of the question, and the objection thereto, it would have been the same thing if it had been asked whether the ground could be found from the description? and, if not, why not? going into the same testimony as to errors in the description which the court had already entertained, and the case would have been upon the same ground upon which it had been proceeding. But counsel's objection threw the case off the track which it had been pursuing. He said the location notice description was conclusive, and it could not be attacked by evidence; and this view the court sustained, apparently inadvertently, because it contradicted the theory upon which the court had theretofore gone. As the objection was made, it was not valid, and we pass upon its validity as made.

The logic of *Russell* v. *Chumasero*, 4 Mont. 317, and kindred cases, points clearly to this view. The notice in those cases was admitted, not as conclusive. The notice, *prima facie* good, may go into evidence. Then it may be shown whether the natural object or permanent monument is such. The reference to the permanent monument is quite as material to the description as is the permanent monument itself. A permanent monument, with no intelligible reference to it, would not describe or identify the claim. Then why may it not be shown that there is no reference, as well as that there is no permanent monument? Of this we have no doubt whatever.

We are of opinion that the court erred in excluding the proffered testimony of Cummings, Keerl, and Robinson, and on that ground the judgment is reversed and the case is remanded, with directions to grant a new trial.

*Reversed.*

HARWOOD, J., concurs.

BLAKE, C. J., having tried this case when chief justice of the territorial Supreme Court, did not participate in this decision.