BRAMLETT, ET AL., RESPONDENTS, *v.* FLICK, ET AL., APPELLANTS.

[No. 1081.]

[Sumbitted April 12, 1899.    Decided July 3, 1899.]

*Mining Claims — Location — Ouster—Evidence — Filing of Record—Construction of Notice.*

1. A notice of location of a mining claim, which, by reference to natural objects and monuments erected by the locator, contains directions which, taken in connection with such objects, would enable a person of ordinary intelligence to find the claim and trace its boundaries, is sufficient.

*Obiter.*—Courts always construe these notices liberally.

2. Whether or not a claim could be ascertained from such notice and the proof in regard to the surroundings is for the jury.

3. In an action to determine adverse claims to a mining claim, a notice of location which described a claim as being situated in a certain county, a certain distance from another claim, and defined by courses marked by substantial monuments, readily identified by marks thereon, taken in connection with evidence that the locator discovered gold-bearing quartz, and made a monument at the place of discovery, upon which he posted his notice of claim, shows prima facie ownership of such claim.

4. An entry upon the land of another under assertion of title is an ouster; intention guides the entry, and fixes its character.

5. Where one enters upon the mining claim of another under claim of title thereto, and

mines thereon, and warns such other not to mine thereon, such conduct amounts to an ouster from the territory of the latter claimed by the former.

6. Where one mining claim encroaches upon another, it is not error to permit the engineer, who has made a plat thereof, to point out the exterior boundaries of the encroaching claim, as it tends to enlighten the jury as to the controversy.

7. A question as to whether a practical surveyor, familiar with the methods of locating claims, and familiar with surveys in mountainous countries and with the neighborhood, could take the description in a notice of location of a claim, and, starting at the point of discovery, find the claim described therein, is incompetent, as calling for an opinion.

8. In an action to determine the boundaries of conflicting mining claims, evidence as to whether or not a surveyor found the boundaries of a claim without assistance, whether the blazing upon posts appeared to be old or new, and whether he could readily find the blazes on the trees along the boundaries, and whether they could be traced from one to another, relates to matters of fact, and is not open to the objection of being opinion evidence.

9. Under Comp. St.. div. 5, § 1477, which provides that the discoverer of a mining claim shall have 20 days in which to complete the location and make the necessary record, a discoverer who posted in plain view a notice of location, and "claim of 1,500 feet on this lead, with twenty days for prospecting," if he made it in good faith, and with an intention to complete his location within the prescribed 20 days, thereby acquired a right to all the ground along the lead legitimately covered by his notice; and one locating thereon subsequently to such notice, and prior to the expiration of the 20 days, does not acquire a superior title, though he filed his statement and record within 20 days, and the former did not.

10. A notice, posted by the locator of a claim, that he claims 1,500 feet on a lode, will be construed to limit his claim to 750 feet along the lode on either side of the point of discovery.

11. The fact that a locator, after posting his notice, included within his boundaries ground not legitimately covered by his notice, if this was done in good faith as the result of ignorance or inadvertence merely, would not invalidate his claim, in so far as it includes what was legitimately covered by the notice.

*Appeal from District Court, Flathead County; Charles W. Pomeroy, Judge.*

ACTION by J. H. Bramlett and others against John J. Flick and another. From a judgment in favor of plaintiffs, defendants appeal. Reversed.

*Mr. G. B. Winston and Mr. C. H. Foot,* for Appellants.

*Messrs. Sanford & Grubb,* for Respondents.

**MR. CHIEF JUSTICE BRANTLY** delivered the opinion of the court.

In this action the plaintiffs seek to recover possession from defendants of a portion of the surface ground of the Blacktail lode claim, situate in Missoula (now Flathead) county. The complaint alleges ownership and right of possession in plaint-

iffs of 1,500 feet along the lode, and 300 feet on either side from the middle or center thereof, under and by virtue of a discovery and location thereof on July 12, 1892, and a compliance with the laws of the United States and the state of Montana, by proper record of their declaratory statement. It is then alleged that on or about August 20, 1894, the defendants entered upon a portion of the claim, ousted plaintiffs therefrom, and now unlawfully withhold the same from them, to their damage in the sum of $200.

The defendants, after denying the allegations in the complaint, set up title, right of possession, and possession, in themselves, under a location called the "Bell Lode Claim," alleged to have been made by them prior to that of plaintiffs'. They allege the facts of their discovery, location, and a compliance with the law necessary to a valid claim. They further allege that the boundaries of the Bell lode claim conflict with those of the Blacktail lode claim, particularly describing the conflicting area by metes and bounds, and claim that they are lawfully in possession of this area under their prior location. The complaint does not describe this area, but in the trial court proof was introduced by the plaintiffs identifying it, and the case was treated by both parties as if the complaint contained a proper description. No question is made here on this point. We shall therefore assume that the complaint is sufficient in this regard, and so treat it.

The trial in the court below resulted in a verdict and judgment for the plaintiffs. The case comes here, on appeal from the judgment and an order overruling defendants' motion for a new trial.

The plaintiffs first produced evidence of what plaintiff Bramlett, who made the location of the Blacktail claim, did at the time of the location, in the way of making a discovery, posting his notice, and marking the boundaries of the claim. His evidence was supplemented by that of A. L. Jaqueth, a mining engineer, who had made a survey of both claims a few days before the hearing. As an exhibit to his statement, there was introduced in evidence a plat or diagram made by

him from this survey, showing the relative positions of both claims, the courses and extent of their boundary lines, and the area in conflict.    For illustration and for convenience for reference, this diagram is inserted here:

Thereupon, over the objection of the defendants, the court admitted in evidence a copy of the notice of location of the Blacktail claim, filed for record on August 1, 1892.    The

ground of the objection was that it is incompetent, immaterial, and irrelevant, in that it contains no such description of the claim, with reference to natural objects or permanent monuments, as will identify the claim, and that the evidence up to that point showed that the claim is not correctly described in the notice. The notice, after stating that the plaintiffs' claim extends 750 feet easterly and westerly from the discovery shaft upon the lode, and 300 feet on either side of the center or middle thereof, proceeds: "This lode is situated in an unorganized mining district in the county of Missoula and state of Montana, on a branch of Foundation Fisher creek, about six miles N. W. of where Thompson Falls crosses same. The adjoining claims are none, the Golden Eagle being about one mile S. E. from the Blacktail. The exterior boundaries of this location are distinctly marked by posts or monuments at each corner of the claim, so that its boundaries can be readily traced, viz: Beginning at N. E. corner post, marked 'A,' and running from thence six hundred feet in a southerly direction to S. E. corner post, marked 'B'; from thence fifteen hundred feet in a westerly direction to S. W. corner post, marked 'C'; from thence six hundred feet in a northerly direction to N. W. corner post, marked 'D'; and from thence fifteen hundred feet, in an easterly direction, back to post 'A,' place of beginning."

The evidence of plaintiff Bramlett tended to show that he went upon the ground on July 12, 1892, and made a discovery at the point marked "Discovery Shaft" on the diagram, of quartz in place, containing free gold; that this was from 9 to 10 o'clock in the forenoon; that he proceeded at once to make the location by piling up a monument of stone at the point of discovery, and putting up a substantial copy of the recorded notice there; that he then staked both ways 750 feet; that he put up the northeast corner first, and then the others, going from this point around the claim, and back to the place of beginning; that at the northeast and northwest corners he cut off trees four or five feet from the ground, and squared the stumps; that at the other two corners he blazed standing

trees on four sides; that he also put up a center end stake at
the east end of the claim; that the corners were marked "A,"
"B," "C," and "D," in order, preceded by the name and
date, "Blacktail, July 12, 1892"; that the east end center
stake was a tree, blazed and marked; that he was engaged at
the location until about noon, and that he saw no signs of
prospecting there; that the ground covered by the claim is
rough and mountainous, with cliffs towards the northwest,
sloping rapidly down towards West Fisher creek on the north
and northeast, and covered partly with undergrowth and down
timber; that he had to guess at the courses, and had no 'means
of measuring the distances, other than by stepping from point
to point; that the Golden Eagle claim was located by himself
on June 27, 1892; that this claim is on Bramlett creek, which
is about a mile southeast of the Blacktail claim; that his camp
where he stayed during his prospecting was on Bramlett
creek; that there is no such stream as Foundation Fisher
creek, but that Foundation is a flat down below on the main
or West Fisher creek, where the Thompson Falls trail crosses
West Fisher creek, and from which the trail up to Bramlett
creek and the Blacktail country leads; that the Blacktail
claim is in fact located on West Fisher creek, and not on a
branch of it; that at the time the location was made he sup-
posed it was on a branch of the West Fisher, but that it is
upon the main stream; that he afterwards, at various times, saw
all the posts put up by him upon the claim and that they all
remained there until about the beginning of this action, except
the northwest corner, which he discovered, in the spring of
1896, had disappeared, and that he restored it at that time by
setting up as near the same place as possible a post similar to
the original one, and marking it, "Post Restored"; and that
the plat introduced in evidence is a fairly correct representa-
tion of the claims, and their relative positions.

This witness became somewhat confused in giving the direc-
tions from each other of the boundary posts upon the claim,
and the course he went from the place of beginning at the
time he made the location.   In the notice it is stated that post

B is in a southerly direction from post A. In his testimony he states he went from post A to B in an easterly direction. From the plat it appears that he went in a direction S., 35° 50' E. Again, the southwest corner is given in the notice as westerly from post B at the southeast corner, while he states that he went in a southerly direction from post B to this corner. The plat shows that this direction is S., 56° 55' W. In another part of his testimony he also states that the Blacktail claim is southwest from the Golden Eagle about one mile, thus placing it a mile or more from the locality given it in the notice. It further appears from the plat and the testimony of Jaqueth that the distances from post to post mentioned in the notice are materially greater than these distances as actually measured. Jaqueth states that there was some difficulty in finding the claim at the time of the survey, and that the plaintiffs were compelled to call to their assistance one McGovern, who knew the country well, before they could locate it. Jaqueth further testifies that at the time the survey was made the country was covered with a deep snow, and that it was necessary for the surveying party, in order to find the corners, to dig down into the snow. It was upon the ground of these inconsistencies and discrepancies in the proof offered in support of the notice, as preliminary to offering it in evidence, that the objection to its admission was predicated. At first glance, the inconsistencies do seem glaring and irreconcilable, but upon closer view they in large measure disappear; at least, they so far disappear, or are explained away by other parts of Bramlett's statements, that we think the court was right in overruling the objection and allowing the notice to go to the jury. The reference in the notice to Thompson Falls crossing and Foundation Fisher creek certainly gives no aid in identifying the claim, in view of Bramlett's statement that no such place exists. But this reference may be omitted entirely, and still enough be left in the notice, by way of reference to the other objects, to go to a jury, under the evidence applying the other objects mentioned to the locality surrounding the claim, and identifying the monuments upon the claim

itself. (Lindley on Mines, Sec. 383; *Flavin* v. *Mattingly*, 8 Mont. 242, 19 Pac. 384; *Gamer* v. *Glenn*, 8 Mont. 371, 20 Pac. 654; *O'Donnell* v. *Glenn*, 8 Mont. 248, 19 Pac. 302; *Hoffman* v. *Beecher*, 12 Mont. 489; 31 Pac. 92; *Upton* v. *Larkin*, 7 Mont. 449, 17 Pac. 728; *Russell* v. *Chumasero*, 4 Mont. 309, 1 Pac. 713; *Brady* v. *Husby*, 21 Nev. 453, 33 Pac. 801.) "It is not for the court to say, by merely looking at a record or declaratory statement, what are or what are not permanent objects or monuments. That is a matter of proof. A stake or a stone of the proper size, and properly marked, may be a permanent monument. A declaratory statement or record thereof, with a reference to permanent stakes or monuments, which did not exist as a fact on the ground, would not be good, while a defective description in the record or declaratory statement might be cured if the stakes or monuments on the ground identified the claim." (*Russell* v. *Chumasero, supra.*) The reference to the Golden Eagle claim is definite enough to allow the notice to be submitted to the jury. True, Bramlett places it in a direction different from the one stated in the notice; but subsequently this error is corrected by a statement that this latter claim is on Bramlett creek, and that the creek is about a mile southeast from the Blacktail claim. This statement is further aided by his testimony in another part of it, where he states that his camp was on Bramlett creek. This camp is more than once referred to by him as "my camp on Bramlett creek," and appears to have been a point on the creek at which the prospectors in that vicinity casually met from time to time in passing to and from the mountains. The fact that the Golden Eagle claim had been located by Bramlett himself on the 17th of the previous month did not necessarily raise a presumption that it was not well known at the time of the location of the Blacktail. In the absence of proof to the contrary, the presumption attached that it was well known. (*Hammer* v. *Garfield Mining & Milling Co.*, 130 U. S. 291, 9 Sup. Ct. 548; *Id.*, 6 Mont. 53, 8 Pac. 153; *Book* v. *Justice Mining Co.*, 58 Fed. 106.) It is fair to suppose that such was the case, since it appears from the proof

that it was among the first locations made in that part of the country, and that the miners going up into that section passed up and down Bramlett creek near where it was located. At any rate, the question was for the jury. (*Dillon* v. *Bayliss*, 11 Mont. 171, 27 Pac. 725; *Metcalf* v. *Prescott*, 10 Mont. 283; 25 Pac. 1037, and the other authorities cited.) Even upon the presumption that this claim was not well known, still there is reference to marked stakes and trees upon the Black-tail claim itself, which the jury, under the authority of the cases cited, and under the proof so far given, might find to be permanent monuments. The discrepancies between the actual courses and distances and those stated in the notice do not necessarily vitiate the notice. "A mistake in the certificate as to the direction and course, such as 'northerly' instead of 'northeasterly,' the description being aided by the monuments on the ground is of no moment." (Lindley on Mines, § 381; *Sanders* v. *Noble*, 22 Mont. 110, 55 Pac. 1047; *Book* v. *Justice Mining Co.*, *supra*.) It is sufficient if the description in the notice "contains directions which, taken in connection with such boundaries, will enable a person of reasonable intelligence to find the claim and trace the lines." (Lindley on Mines, § 381.) The courts always construe these notices liberally, and if, by any intendment, the proof can be reconciled and made consistent with the statement contained in them, the jury will be allowed to say whether or not, upon the whole proof, the identification of the claim is sufficient.

2. At the close of plaintiffs' case, defendants asked the court to direct a nonsuit upon the grounds (1) that the plaintiffs had failed to show title in themselves, and (2) that they had failed to show that they had been ousted by the defendants, or, if they did show an ouster by defendants, they had failed to identify the area from which they had been ousted. Sufficient has already been said as to what the proof tended to show touching the facts of plaintiffs location, and we think the plaintiffs made out a sufficient case in this regard to go to the jury upon the testimony of the engineer and Bramlett alone. Moreover, the statements of Bramlett are materially

aided by those of other witnesses who were subsequently examined by the plaintiffs, and particularly by the statement of the witness Geiger, who fixed the location of the Golden Eagle claim almost exactly in accordance with the statement in the notice. He was also corroborated by Geiger, Roderick, and others as to the presence upon the ground of the monuments placed there by him to mark the boundaries. These witnesses saw at various times from early in August, 1892, some or all of them; and Roderick states that they all remained there until it was discovered in the spring of 1896 that the northwest corner had disappeared, when he assisted Bramlett in replacing it.

The defendants contend that the five posts put upon the claim by Bramlett do not mark the boundaries sufficiently. But, under the authorities already cited, this was for the jury, and not for the court, to say, after hearing the proof.

We cannot sustain the contention that the proof fails to show an ouster by defendants, or the area from which the plaintiffs were excluded. The area in conflict is clearly shown by the testimony of Jaqueth, aided by the plat. It is shown by designated metes and bounds. True, this area is not described in the complaint, but the contention is not that the pleading is not sufficient, but that the proof is not sufficient.

As to the ouster, the plaintiff's evidence showed that defendant Flick in 1895 was actually at work on the lead upon which the Blacktail discovery was made, and within the conflicting area. He had a man by the name of Preston working at that point. He had previous to this time, in 1895, notified the plaintiffs not to do any other work upon the lead. The plaintiffs were then at work taking out ore at the point marked "Blacktail Tunnel" on the plat. He claimed that this was upon the Bell claim, and that it belonged to him. He remained there and continued the work. He had also been at work there some in 1894. Taking this proof in connection with the fact that the boundaries of the Bell claim cover a considerable portion of the Blacktail, it sufficiently establishes an ouster of the plaintiffs from that part of the claim. An

·entry upon the land of another under assertion of title is an ·ouster. (*West* v. *Lanier*, 9 Humph. 762.) In *Ewing* v. *Burnet*, 11 Pet. 52, it is said: "An entry by one man upon the land of another is an ouster of the legal possession arising from the title, or not, according to the intention with which it is done. In legal language, the intention guides the entry, and fixes its character." (See, also, *Bath* v. *Valdez*, 70 Cal. 350, 11 Pac. 724, and Lindley on Mines, Sec. 537 *et seq.*) It is rarely the case that actual possession of a mining claim is maintained at all times. It is not often that one is inclosed. The possession is constructive, being drawn to the owner by virtue of his location. When, therefore, another enters upon the claim, asserting ownership therein by virtue of an alleged superior title based upon a location, and exercises dominion ·over it to the exclusion of the rights of the owner, this amounts to an ouster. We think the evidence on the part of the plaintiffs sufficient to show *prima facie* ownership in plaintiffs, and an ouster from the conflicting area by defendants.

3. Engineer Jaqueth was asked to point out the exterior boundaries of the Bell claim. This was in connection with his detailed statement, illustrated by the plat, touching the relative positions of the two claims and the conflicting area· The defendants objected to the question, as tending to bring out an immaterial matter. The court properly permitted him to answer. The evidence tended to enlighten the jury and give them a clear idea of the controversy between the parties.

4. This witness was also called to testify for the defendants in support of the Bell location. He was asked the following question by counsel for defendants: "I will ask you to state whether a practical and experienced engineer and surveyor, familiar with the methods of locating claims and familiar with surveys in mountainous countries, and with a knowledge of the neighborhood, could take the description given in the notice of (the Bell) location, and, starting at the point of discovery, find the ground or claim included within and known as the Bell location?" This was objected to by plaintiffs, and excluded by the court, as incompetent. A spe-

cific ground of objection, also, was that the question called for the opinion of the witness as an expert, and not for a statement of fact. Defendants' contention is that the evidence called for should have been admitted in support of the description and references contained in the notice of the Bell location. They insist that the question calls for a statement of fact, and not for an opinion or conclusion. The witness was not examined as an expert. No ground had been laid for this purpose. The question was addressed to him as a practical observer. Nevertheless, even from this view, the objection was sufficient to require a ruling by the court. The affirmative answer evidently expected by counsel would have been equivalent to a statement by the witness that a practical and experienced engineer, familiar with surveys in mountainous countries, with the methods of locating claims in such places, and with a knowledge of the neighborhood, could take the description in the notice, and, starting at the discovery, find the claim. This is not a statement of any fact the witness had learned, or could have learned, through his organs of sense. It is simply an opinion as to what would be the probable result of a trial made by a practical and skilled engineer under a given state of facts. The inquiry appertained to no "question of science, art or trade." It was directed to a determination of the question of the sufficiency of the acts done by a third person for the purpose for which they were intended, viz., the identification of the Bell claim. This was the question to be answered by the jury upon the same facts which were within the knowledge of the witness. The trial court was therefore clearly right in refusing to permit the witness to state his opinion to the jury.

The defendants cite *Dillon* v. *Bayliss*, 11 Mont. 171, 27 Pac. 725, as supporting their contention. In that case evidence of the same character was offered by the defendant for the purpose of rebutting and overturning the presumption established in favor of plaintiff's claim by the introduction of the notice of location, and the evidence in support of it. The objection made was that the notice was conclusive as to the

matter stated in it. This Court held that the notice is not conclusive, but that the description and references contained in it can be shown to be unintelligible and delusive. The question of whether the opinions of engineers or prospectors can be admitted for this purpose was reserved, for the court say, "Let it be well understood that we pass upon the objection as it was made and sustained." (11 Mont. 183, 27 Pac. 728.) This case is therefore no authority in support of defendant's contention. Other witnesses examined by defendants were asked substantially the same question. Objection was properly sustained to all of them.

This witness (Jaqueth) was further asked whether he found the boundaries of the Blacktail claim without assistance; whether the blazing upon the posts at the west end appeared to be old or new; whether the marks on the boundaries of the Bell claim appeared to be old or new; whether he could readily find the blazes on the trees along the end lines of the Bell claim, and whether they could be traced or observed from one to the other. Similar questions were put to other witnesses. The court sustained objections to them all on the ground that they called for the opinion of the witnesses. These rulings were clearly wrong. Witness Jaqueth had already been permitted to answer the first of these questions when upon the stand for the plaintiffs. It might have been excluded upon the ground that it was a repetition, but it was clearly competent as reflecting upon the condition of things found upon the ground at the time of the survey. There was a sharp conflict in the testimony as to whether some of the monuments had ever been put upon the Blacktail claim,—particularly as to the northeast and northwest corners. There was some evidence tending to show that these corners had not been put up at the date of the Blacktail location. There was the same controversy as to the situation of the posts upon the Bell claim, and whether they had been put there as early as claimed by defendants. There was also a controversy as to the existence of blazes on the trees along the boundaries of this claim. The evidence sought to be brought out was certainly mate-

rial, and not open to the objection made. It all consisted of matters of fact, a knowledge of which was gained by the witnesses from observation upon the claim.

5. With the single exception of the particulars just mentioned, the rulings of the trial court upon the admission and exclusion of evidence were correct, so far as our attention has been called to them. In instructing the jury, however, the court adopted an erroneous view of the law touching the rights of defendants under the Bell location. The evidence introduced by defendants tended to establish the following: Defendant Flick went alone upon the ground covered by the Bell claim on July 8, 1892,—four days before Bramlett went there. He was without tools, but went over the ground to see if he could find anything. At the point marked on the plat "Discovery Shaft," he found a lead cropping out of quartz in place, bearing gold. After examining the lead, which he could follow along by its croppings, he cleaned off the surface of a tree standing at the discovery point, and wrote upon it, in plain view: "The Bell claim. Located July 8th, 1892. I claim 1,500 feet in length on this lead, with twenty days for prospecting. [Signed] J. J. Flick." Thereupon, after prospecting along the lead for a while, he went away to look for feed for his horses. Having found none, the following days until the 14th were spent in looking for a camping place where it could be had. He returned to the claim on the 14th in company with one Shaughenessy. They prospected on the claim and in its vicinity on that and the following day. On the 16th, after prospecting over the ground again with Shaughenessy, he proceeded to complete the location by putting up four corner and two end stakes, beginning at the east end center stake. He put up this and the northeast and southeast corners, blazing along the line as he went. He then returned to the discovery, and blazed along through on the outcrop to the west end, where he put up two corner stakes and a center stake, blazing out the lines. The stakes were made by cutting off trees four or five feet from the ground and squaring the stumps, except at the northwest

corner, where he found a stump 20 feet high, which he squared as it stood. All of these monuments were marked, "Northeast corner of the Bell claim," "East end center stake of the Bell claim," etc. The distances and directions were estimated; the intention being to locate 100 feet easterly and 1,400 feet westerly from the discovery, and 300 feet on either side. A notice was posted at the discovery, substantially the same as the declaratory statement filed for record. This declaratory statement was subsequently prepared by a notary and left with him for record, but was not recorded until August 2, 1892. A copy of this was introduced in evidence. No objection was made as to its sufficiency in substance and form. It is not necessary to note it, further than to mention the fact that it contains the statement that "said quartz lode was discovered on July 8, 1892." Other evidence tended to establish the good faith of Flick in completing his location; claiming that his right dated from July 8th, the time at which he made his discovery. Defendant Rockefeller was joined as one of the locators when the declaratory statement was made out.

Defendants' contention at the trial was that, Flick having made his discovery and posted his notice upon the ground on the 8th of July, their claim thereto was superior to that of plaintiffs, that this act on the part of Flick withdrew the ground which was claimed in his notice from exploration by others, and that, plaintiffs having made their location within the 20 days during which the ground was not open to location, their location was void, as to the conflicting area, and they acquired no right thereto, notwithstanding defendants failed to make their record within the 20 days. The court entertained a different view of the law, and proceeded upon the theory that, inasmuch as the plaintiffs made their location and recorded their declaration before the defendants did, they acquired a right to the conflicting area, to the exclusion of defendants. We quote the fourth paragraph of the charge, as illustrating the view the court held, and the theory upon which the case was submitted to the jury:

"You are instructed that if you find from the evidence that the defendants discovered the Bell lode or claim on the 8th day of July, 1892, before they had a valid or could have had a valid and subsisting right to said lode or claim, as against any person who had acquired an adverse right thereto, the defendants must have distinctly marked the location on the ground, so that its boundaries could be readily traced, and made and filed in the office of the county clerk and recorder in the county where such claim was situated an affidavit of the location thereof. If the defendants failed to do any one of these things, then, as against the plaintiffs, if the plaintiffs had made a valid location of the same, or any portion of the same ground, by discovery and location and recording, between the said 8th day of July, 1892, and the 2d day of August, 1892, the plaintiffs' right to the land in controversy would be valid, and a better right, and you will find for the plaintiffs."

Under the court's view of the law, as stated here, the jury could not have found for the defendants, in any event, unless they found Bramlett's location bad; for there is no controversy but that Bramlett finished whatever he did in the way of making his location on the 12th, or that he filed his statement for record on the twentieth day thereafter. And although the defendant Flick made his discovery and posted his notice on the 8th, still this gave him no rights at all, if he did not finish his location within the 20 days, and get his notice on record, no matter what were his intentions, or whether he was acting in good faith or not. The question presented is not without difficulty, but we think the result of the decisions of the courts upon similar controversies logically leads to the conclusion that, if Flick actually posted the notice in plain view upon the exposed lead, as claimed by him, on July 8th, and thereafter during the 20 days intended in good faith to secure his claim by completing his location, no failure on his part to make such a location and proper record within the 20 days would inure to the benefit of plaintiffs. In *Doe* v. *Waterloo Mining Co.*, 70 Fed. 455 (a similar case, decided in

1895), it was held that the discoverer of a mineral vein should have a reasonable time after his discovery to complete his location; the length of time depending upon the situation of the ground, its character, the means of marking, the boundaries, and the abilities of the discoverer to ascertain the course or strike of the vein. The court held this to be the rule in the absence of local rules and regulations fixing the time within which the location might be completed. In this case 20 days were held to be reasonable. The supreme court of Nevada announces the same rule. (*Gleason* v. *Martin White Mining Co.*, 13 Nev. 442.)

Wherever there are statutory provisions fixing the time within which, after discovery, the prescribed work necessary to a valid location must be done in order to secure the claim, it is held that the discoverer has the full time provided in the statute to complete it. (Lindley, on Mines, § 339; *Omar* v. *Sopar*, 11 Col. 380, 18 Pac. 443; *Erhardt* v. *Boaro*, 113 U. S. 527, 5 Sup. Ct. 560; *Marshall* v. *Harney Peak Tin Manufacturing Co.*, 1 S. D. 350, 47 N. W. 290; *Sanders* v. *Noble*, *supra*.) Under our statute now in force (Political Code 1895, §§ 3610–3612), at the time of discovery a notice must be posted at the point of discovery, and it is provided therein what this notice shall contain. The statutes of Colorado and South Dakota contain similar provisions. In *Sanders* v. *Noble*, *supra*, following the authorities cited, this court held that, upon the posting of the notice at the discovery in compliance with the provisions of the statute, the prospector not only has the full 90 days in which to do the work necessary, but that in marking his boundaries after the work is done he may also swing his claim so as to make it cover the lead to the extent claimed, to the exclusion of others who have sought in the meantime to occupy ground within the possible limits of the claim. Our statute of 1887, under which the locations involved here were made, contained no provision requiring a notice to be posted, but it allowed 20 days in which to complete the location and make the necessary record. (Compiled Statutes, Fifth Division, § 1477.)

It therefore seems to be the inevitable conclusion from the authorities that the defendant Flick, if he posted his notice in good faith, in plain view, with the intention to complete his location within the prescribed 20 days, after prospecting sufficiently to enable him to determine the course or strike of the vein, thereby acquired a right to all the ground along the lead legitimately covered by his notice, to the exclusion of any person endeavoring to locate any part of it by means of a junior discovery.

Recurring now to the notice posted, the amount claimed is simply 1,500 feet along the lead; nothing being said as to the direction in which this was to be measured. In *Erhardt* v. *Boaro, supra,* a similar notice was considered by the supreme court of the United States. In commenting upon it, Mr. Justice Field said: ''The written notice posted on the stake at the point of discovery * * * declares that they [the locators] claim fifteen hundred feet on the 'lode, vein, or deposit.' It thus informed all persons subsequently seeking to excavate and open the lode or vein that the locators claimed the whole extent along its course which the law permitted them to take. It is, indeed, indefinite, in not stating the number of feet claimed on each side of the discovery point, and must therefore be limited to an equal number on each side; that is to seven hundred and fifty feet on the course of the lode or vein in each direction from that point. To that extent, as a notice of discovery and original location, it is sufficient.'' In posting the notice he did upon the lead, we are of the opinion that Flick thereby established a right for the statutory period of 20 days to 1,500 feet along the lead, but that he was limited in this right to 750 feet on either side of the point of discovery. The fact that in making the location thereafter he included within his boundaries ground not legitimately covered by his notice, if this were done in good faith, as the result of ignorance or inadvertence merely, would not invalidate his claim, in so far as it includes what was legitimately covered by the notice. In no event would any error or misprision on his part in endeavoring in good faith to com-

plete his location inure to the benefit of the plaintiffs under their location, made on July 12th, as to any ground covered by it which comes within the limits embraced by Flick's notice. To the extent, then, of 750 feet along the lead easterly and westerly from the discovery on the Bell claim, the ground was not open to exploration during 20 days after July 8th. In so far, therefore, as any of this ground is covered by the Blacktail claim, the latter should be held invalid, provided Flick's good faith in posting his notice is established by the proof.

The instructions of the court on this branch of the case, as illustrated by the paragraph quoted, were therefore erroneous and prejudicial to the defendants. They are therefore entitled to a new trial upon the lines herein indicated.

We are requested to pass upon the question as to whether the evidence is sufficient in any event to warrant a verdict for plaintiffs. As there must be a new trial, we decline to express any opinion on this point.

Many other questions have been urged upon the attention of the court, but we think enough has been said herein to guide the court below in trying the cause anew.

Let the judgment and order appealed from be reversed, and the cause be remanded, with directions to grant defendants a new trial.

*Reversed and Remanded.*