LEVERIDGE ET AL., APPELLANTS, *v.* HENNESSY ET AL., RESPONDENTS.

(No. 3,244.)

(Submitted September 16, 1913. Decided October 6, 1913.) ·

[135 Pac. 906.]

*Mining Claims—Declaratory Statement—Misleading Description—Void Location—New Trial—Discretion.*

New Trial—Order—Discretion—Review.

    1.  *Quaere:* Must the ruling of a district judge, called in to pass upon a motion for new trial, be tested by the same standards of discretion as would be applied to that of the judge who tried the case if he had ruled thereon?

Mining Claims—Declaratory Statement—Descriptions—Degree of Accuracy Required.

    2.  Though it was not necessary that a declaratory statement of a quartz lode location made under amended section 3612, Political Code of 1895 (Laws 1901, p. 141), contain a description of the claim by metes and bounds, or that the statements therein be made with mathematical precision as to measurements or technical accuracy of expression, the locator was required to so describe the claim that the boundaries could be readily traced, and that a person of reasonable intelligence could, by aid of the directions when taken with the markings upon the ground, find the claim and run its lines; hence where the description is so erroneous as to be delusive and misleading, as when the declaratory statement and the markings do not even approximately agree as to the general shape of the claim or as to any point, direction or distance, the location is void.

    [As to discovery of minerals in mining claims and rights of locators prior thereto, see note in 139 Am. St. Rep. 154.]

Same—Misleading Description—When Location Void.

    3.  *Held,* under the rule declared in paragraph 2, *supra,* that where the descriptions found in a declaratory statement, though suggesting a rectangle lying north and south, were such that one taking them and proceeding from the northern corners according to the directions given, would miss one of the southern corners by over 500 and the other by over 800 feet, and find the south line not only over 100 feet farther from the point of discovery but also some 432 feet shorter than called for in the statement, the location was void.

New Trial Order—Discretion.

    4.  Where the conclusion of the trial court in an action to quiet title to a portion of a mining claim in apparent conflict with another location was supported by the decisive preponderance of the evidence, there was not any room for discretion in the district judge called in to determine a motion for new trial, and the granting of the motion was therefore error.

*Appeal from District Court, Granite County; J. Miller Smith, a Judge of the First Judicial District, presiding.*

ACTION by R. S. Leveridge and another against Tom Hennessy and another. From an order granting a new trial, plaintiffs appeal. Reversed.

*Mr. D. M. Durfee* and *Mr. W. E. Moore,* for Appellants, submitted a brief and argued the cause orally.

*Mr. William Meyer,* for Respondents, submitted a brief and made oral argument.

MR. JUSTICE SANNER delivered the opinion of the court.

Action by appellants to quiet title to a portion of the East Brooklyn lode, Granite county, Montana, which is in apparent conflict with a prior location of the Speculator lode, claimed by respondents. The trial was to the court, Honorable Geo. B. Winston presiding without a jury, and he made findings of fact and conclusions of law in favor of appellants. Thereafter respondents, having filed their notice of intention to move for a new trial and having caused their bill of exceptions to be signed and settled by Judge Winston, filed an affidavit disqualifying him from further proceeding with the motion. Thereupon the Honorable J. Miller Smith, of the first judicial district, was called in to hear and determine the motion, and the same, having been submitted to him, was granted. From the order granting respondents' motion for new trial, this appeal is taken.

Much space is given in the briefs to a discussion of the question [1]   whether the ruling of a judge called in to pass upon a motion for a new trial is to be tested by exactly the same standards of discretion as would be applied to that of the judge who tried the case if he had ruled thereon. The question is an interesting one and unsettled in this state; but we do not deem the present case an opportune one for its consideration for reasons which will presently appear.

The contention of appellants is: (1) That the markings of the Speculator as now claimed by the respondents are not the same as originally made upon the ground, and therefore the

respondents abandoned their claim; and (2) if the markings
of the Speculator as now claimed by the respondents are the orig-
inal markings upon the ground, then the location was void *ab
initio* because of a substantial departure from the calls of the
declaratory statement. The subjoined drawing will illustrate
the situation; the + representing the point of discovery; the
double line representing the Speculator as now claimed by the

respondents; the single line representing the Speculator as
originally marked upon the ground, according to appellants;

and the broken line representing the claim as it would appear if in literal conformity to the calls of the declaratory statement.

As to whether the Speculator was ever marked upon the ground in the manner asserted by appellants (shown by the single line), there is a sharp conflict in the evidence, but no good purpose would be served by reciting the testimony at length, for the reason that the trial court did not specifically find upon the subject. The finding, so far as it touched upon the asserted claims of respondents, is that they "never have been and are not now the owners of the alleged Speculator quartz lode mining claim * * * and are not and have not been at any time the owners of the area in conflict between the said East Brooklyn quartz lode mining claim and the said alleged Speculator quartz lode mining claim." As we read this finding, it proceeds upon the theory that the location of the Speculator was void and is inconsistent with a valid claim subsequently lost by abandonment.

Whether the location of the Speculator was void must be determined by the only criterion upon which it is assailed, *viz.*, a fatal divergence between the declaratory statement as filed and the markings of the claim upon the ground. The statute in force when the Speculator location was made (section 3612, [2] Pol. Code 1895, as amended by Laws 1901, p. 141) did not require, as it did before and has since, that the declaratory statement contain a description of the corners with the markings thereon, but it was required of the locator that, within thirty days after posting his preliminary notice of location, he "define the boundaries of his claim by marking a tree or rock in place or by setting a post or stone at each corner or angle of the claim," and that, within sixty days after posting his preliminary notice of location, he file a declaratory statement containing, among other things, "the number of feet claimed in length along the course of the vein each way from the point of discovery, with the width on each side of the center of the vein," and "such description of the location of said claim with reference to some natural object or permanent monu-

ment as will identify the claim.'' Such a statute, it is true, does not require that the declaratory statement contain a description by metes and bounds (*Upton* v. *Larkin,* 7 Mont. 449, 17 Pac. 728; *Gamer* v. *Glenn,* 8 Mont. 371, 20 Pac. 654), but it does require that, taking the discovery as the initial point, the boundaries be so definite and certain as that they can be readily traced (*Hauswirth* v. *Butcher,* 4 Mont. 299, 1 Pac. 714), and that the declaratory statement contain directions which, taken with the markings, will enable a person of reasonable intelligence to find the claim and run its lines (1 Lindley on Mines, sec. 381; *Gamer* v. *Glenn, supra; Bramlett* v. *Flick,* 23 Mont. 95, 57 Pac. 869). While neither mathematical precision as to measurements nor technical accuracy of expression is expected, the degree of accuracy that is required is indicated by the fact that the locator after his discovery had thirty days in which to definitely ascertain the course of the vein and mark his boundaries and thirty days more in which to file his declaratory statement describing his claim so that it could be identified. (*Sanders* v. *Noble,* 22 Mont. 110, 55 Pac. 1037.) That degree of accuracy is not met if the description given is so erroneous as to be delusive and misleading, as when the declaratory statement and the markings upon the ground do not even approximately agree as to the general shape of the claim or as to any point, direction, or distance. (*Dillon* v. *Bayliss,* 11 Mont. 171, 27 Pac. 725.)

Recurring, then, to the declaratory statement of the Speculator, we observe that it calls for a tract of ground 1,500x600 **[3]** feet, ''800 feet in a northerly direction and 700 feet in a southerly direction along the course of the said lode (which is given as northerly and southerly) from the point of discovery and 300 feet on each side, * * * '' the exterior boundaries of which ''are distinctly marked by posts or monuments at each corner, * * * namely: Beginning at the northwest corner No. 1, * * * thence easterly 600 feet to the northeast corner No. 2, * * * thence southerly 1,500 feet to the southeast corner No. 3, * * * thence westerly 600

feet to the southwest corner No. 4,  *  *  *  thence northerly 1,500 feet to the place of beginning.'' As it is now claimed by respondents to have been always marked upon the ground, the Speculator is shaped as shown by the double line in the drawing above and comprehends a tract of ground 500 feet northerly, 800 feet southerly, 120 feet easterly, and 230 feet westerly from the point of discovery, bounded as follows: Commencing with the northwest corner and running thence south 68° 37', east 498.5 feet to the northeast corner, thence south 5° 51' west 1,311.41 feet to the southeast corner, thence north 68° 34' west 167.9 feet to the southwest corner, thence north 7° 13' west 1,436.3 feet to the place of beginning.

While the sufficiency of the description is essentially a question of fact for the jury or for the court sitting without a jury (*Bramlett* v. *Flick, supra*), and while no stress is or can be laid upon the mere departure of the lines from the cardinal directions, since the tract is northerly and southerly, yet the description given in the declaratory statement does suggest that the claim is a rectangle, and hence that one starting from the point of discovery and finding the northern corners might, by proceeding at right angles to the northern line, follow the other lines and pick up the other corners. As a matter of fact, if he did so proceed he would miss the southeast corner by over 500 feet and the southwest corner by over 800 feet. Furthermore, the record discloses that the southerly portion of the claim lies in timber through which the lines were not ''swamped''; that the south line is over 100 feet farther from the point of discovery and over 432 feet shorter than called for; and that the claim as laid out in nowise resembles what the declaratory statement suggests. In view of all this it is a rational inference that some difficulty might be expected in any attempt to find the lines and corners with the aid of the declaratory statement, and the record shows that as a matter of fact difficulty was met, and doubt may be entertained as to whether it was wholly surmounted even with the aid of the locator who placed

the corners.   No liberality of construction will avail to overcome such a condition.

Respondents place much reliance upon *Bramlett* v. *Flick, supra,* wherein a claim which departed somewhat as to directions and distances from those given in the declaratory statement was sustained.   But the departures in that case were neither so many nor so great as are here presented.   The directions in the Bramlett notice, if followed with reasonable intelligence, could not mislead, and the jury found as a matter of fact that they were sufficiently clear and definite.   But no one, unless told, would suppose the Speculator as marked and the Speculator as described to be one and the same.

The conclusion of the trial court that the Speculator had never [4]  any lawful existence is supported by the decisive preponderance of the evidence.   In these circumstances there was no room for discretion in the judge who granted the motion; there was nothing for it to rest upon.   The motion should have been denied, and the order granting it is reversed.        *Reversed.*

Mr. Chief Justice Brantly and Mr. Justice Holloway concur.